STATE OF NORTH CAROLINA v. GEORGE HENRY MOOREFIELD

No. 7630SC828

(Filed 20 April 1977)

1. **Constitutional Law § 45— defendant conducting own defense — attorney as advisor**

   In a prosecution for feloniously burning a building, defendant's contention that the trial court erred in assigning counsel to assist him and then failing to inform him adequately of the limitations under which counsel would have to operate is without merit where the record revealed that defendant requested and was given the right to employ counsel in an advisory capacity, and that he not only agreed to but insisted upon the limited participation by the attorney.

2. **Constitutional Law § 45— appearance in propria persona — representation by counsel — alternative right**

   A party has the right to appear in *propria persona* or by counsel, but the right is alternative, and one has no right to appear both by himself and by counsel; however, the trial court in its discretion also

may permit the defendant to conduct the defense and at the same time be furnished with the advice of a court-appointed attorney.

3. **Indictment and Warrant § 1— defendant tried upon indictment — probable cause for arrest warrant — effect**

Where defendant was tried upon an indictment, the question of probable cause to issue the warrant under which he was initially arrested had no effect on the jurisdiction of the trial court.

APPEAL by defendant from *Ferrell, Judge.* Judgment entered 30 January 1976, in Superior Court, HAYWOOD County. Heard in the Court of Appeals 16 March 1977.

Defendant pled not guilty to the charge of feloniously burning a building known as G's No. 3 Adult Book Shop in the Town of Maggie Valley on 1 August 1975, a violation of G.S. 14-62.

In a hearing before Judge Thornburg on 13 November 1975, defendant stated, "I am going to defend myself." He further told the court that he would accept an attorney selected by the court with the understanding that he could "set up my own defense" and that the court would determine a reasonable fee. After recess the court notified defendant that Attorney John Jay had been requested to assist him. On 17 November the defendant, with Mr. Jay present, was heard on his motion that Judge Thornburg disqualify himself and his motion for change of venue or special venire on the ground of substantial publicity in the Thirtieth Judicial District. In an order denying both motions Judge Thornburg made findings in which he traced the proceedings from the inception of the case, including the finding that defendant requested that counsel be assigned, at defendant's expense, "to assist him in the preparation and trial of the case with the understanding that he (defendant) assumed the full, primary responsibility for his defense of the case."

At trial the evidence for the State tended to show that in April 1975, Irma Ring rented to defendant a building in the Town of Maggie Valley for a gift shop; defendant proceeded to operate an adult book store in the building; in July she started ejectment proceedings, and after hearing, defendant was ejected at the end of July. On 1 August 1975 sometime after 5:00 p.m. Burton Edwards, age 11, and Herbie Savage, age 13, were outside a restaurant across the street from the bookstore. They saw defendant and another man drive up in a reddish-brown car with a white top and park in front of the

bookstore. They saw defendant unlock the door, remove a box from the trunk, and carry it inside. Defendant returned a few minutes later with the box and placed it in the trunk. The other man then came out, defendant locked the door, and they drove off. About three to five minutes later, the boys saw smoke coming out of the store. Clyde Rich drove by the store about 8:30 p.m., saw a maroon car with a white top parked in front of the store, and 20 to 30 minutes later heard the fire siren. Notice of the fire was received by the fire department at 8:45 p.m., and the fire truck arrived at the scene at 8:50 p.m. It took several hours to extinguish the fire. An examination of the building revealed that the doors were locked, that there were 19 charred holes in the floor and that the electrical wiring beneath the floor was insulated and intact. A jug containing gasoline was found on an unburned part of the floor. On cross-examination the town fire chief testified that a black, dense smoke came from the building "which would make me have the opinion that it was started with an oil-base type of material or something of this nature." An investigating officer testified that when he went to the defendant's house some time after the fire, a red car with a white top was parked on the premises.

Defendant called as his witnesses town aldermen, police officers, district attorneys, news reporters, and others, and attempted to show by them a conspiracy to run him out of the state, but none of the witnesses called admitted that they entered into a conspiracy.

The jury found defendant guilty as charged. From judgment imposing imprisonment, defendant appealed.

*Attorney General Edmisten by Special Deputy Attorney General T. Buie Costen and Associate Attorney Nonnie F. Midgette for the State.*

*Wesley F. Talman, Jr., for defendant appellant.*

CLARK, Judge.

Upon his arrest on 6 August 1975, the defendant delivered to the arresting officer a petition for habeas corpus. Thereafter, defendant made numerous motions before, during, and after trial. Further, he filed a civil action in the federal court against Superior Court Judge Harry C. Martin, the Sheriffs of Buncombe and Catawba Counties, and various local officials alleg-

---

**State v. Moorefield**

---

ing violations of his constitutional rights and praying for damages in the sum of $1,200,000.00. He also petitioned the federal court to stay all proceedings in the state court. Many of his motions and petitions were based on his claim that there was a conspiracy among state and local officials to run him out of the state. The adverse rulings of the court were not the result of any lack of vociferous determination on his part. The defendant attempted to show violation of various constitutional rights and a conspiracy against him by judges, law enforcement officers, and other government officials. Throughout the trial the trial judge exhibited admirable patience and judicious restraint. The trial lasted three days. Only once was defendant found in contempt of court. The record on appeal exceeds 400 pages. Defendant offered the testimony of 23 witnesses, including the district attorney, and the court allowed him to recall 14 of them for further examination. Despite this effort, the defendant was unable to elicit any evidence of a conspiracy or any other evidence which tended to show his innocence of the crime charged.

[1] The defendant contends that the court erred in assigning counsel to assist him and then failing to adequately inform him of the limitations under which counsel would have to operate. Since defendant at no time claimed indigency, we do not have here an issue concerning the right of an indigent defendant as a matter of due process to court-appointed counsel. See *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799 (1963). The defendant insisted that he wanted to defend himself. He informed the court that he had been to college for three years, that he had some experience in court, and that he was competent to defend himself except for "the formalities." Judge Thornburg, obviously concerned about defendant's lack of skill and experience, offered to find an attorney to assist him, with the understanding that defendant retain the responsibility for the defense of the case and with the understanding that the court would determine a reasonable fee which defendant would pay. The attorney was not appointed by the court but was recommended to the defendant, who conferred privately with counsel after his appearance, and then both returned to the courtroom. The record on appeal reveals that thereafter counsel assisted in making motions, and was present with defendant for consultation though the defendant examined all witnesses. We think it is clear that defendant requested and

was given the right to conduct his own defense, and that he requested and was given the right to employ counsel in an advisory capacity. He not only agreed to but insisted upon the limited participation by the attorney. *State v. Robinson,* 290 N.C. 56, 224 S.E. 2d 174 (1976), does not support defendant's contention that this arrangement deprived him of his right to a fair trial. In that case the court held that, where, after discord between defendant and his court-appointed counsel, counsel began questioning the defendant's only witness, then fell silent, and left defendant to take over the direct examination, it was prejudicial error since this procedure must have conveyed to the jury the impression that counsel attached little significance or credibility to the testimony of the witness or that the defendant and his counsel were at odds. No such impression could have been conveyed here since defendant conducted all defense matters in the presence of the jury.

[2] A party has the right to appear in *propria persona* or by counsel, but the right is alternative, and one has no right to appear both by himself and by counsel. *State v. Phillip,* 261 N.C. 263, 134 S.E. 2d 386 (1964). However, the trial court in its discretion may permit a defendant himself to cross-examine a witness. *State v. Rogers,* 12 N.C. App. 160, 182 S.E. 2d 660 (1971). The trial court in its discretion also may permit the defendant to conduct the defense and at the same time be furnished with the advice of a court-appointed attorney. *People v. Pilgram,* 160 Cal. App. 2d 528, 325 P. 2d 143 (1958) ; see Annot., 77 A.L.R. 2d 1233 (1961). In the case before us the defendant elected to conduct his defense and to have counsel present in an advisory capacity. It is apparent from the record on appeal that the defendant represented himself with remarkable redundancy and little skill or judgment, eliciting on cross-examination evidence prejudicial to his cause and failing to elicit from his own witnesses any evidence favorable to him. But the defendant, having insisted upon conducting his own defense, must endure the trial results in the absence of a showing of reversible error.

[3] The remaining assignments of error raise routine questions. By one assignment defendant contends the trial court should have declared a mistrial *ex mero motu* due to the carnival atmosphere of the trial. The record on appeal discloses the possibility that the defendant could have created a carnival atmosphere but for the patience and restraint of the presiding

judge. Another assignment raises the question of whether probable cause existed to issue the warrant under which defendant was arrested. Defendant was tried upon an indictment. Therefore, the question of probable cause to issue the warrant under which he was initially arrested has no effect on the jurisdiction of the trial court. *State v. Hargett,* 255 N.C. 412, 121 S.E. 2d 589 (1961). We have carefully considered all other assignments of error and find them to be without merit.

No error.

Judges BRITT and HEDRICK concur.