STATE of Missouri, Respondent,

v.

Guy Erwin GREGORY, Appellant.

No. 41194.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 4, 1980.

William J. Shaw, Patrick M. Sanders, Lauren M. Weisfeld, Asst. Public Defenders, Clayton, for appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, John M. Morris, Asst. Attys. Gen., Jefferson City, Courtney Goodman, Pros. Atty., Clayton, for respondent.

CRIST, Judge.

Defendant was convicted of statutory rape (§ 559.260, RSMo.Supp.1975) and the jury assessed his punishment at ten years imprisonment. We affirm.

Defendant was charged by indictment on December 2, 1977, and at the December 9 arraignment, assistant public defender, Jim Whitney, entered his appearance as defense counsel. Subsequently, on March 1, 1978, a substitute public defender, Patrick M. Sanders, entered his appearance as defendant's attorney. Defendant's motions to suppress were heard and overruled on October 2, 1978, and, following several continuances by defendant and one by the state, the cause proceeded to trial on October 23, 1978.

Voir dire was conducted and a jury selected on the first day of trial. The next day, before the jury was sworn, defense counsel informed the court that defendant had been under the influence of narcotic drugs during voir dire. Defense counsel also stated that after the previous day's court session, defendant had for the first time "come clean" with counsel, and that defendant's witnesses would, if called, give perjured testimony. Defense counsel related that he was presently faced with an ethical problem in that, if he proceeded to trial, he would be, "left in the position . . [of] putting on perjured testimony." Defense counsel indicated that defendant had presently recovered from the effect of the drugs and desired to plead guilty to a reduced charge previously offered by the state.

However, defendant himself requested permission to telephone someone he identified only as his "Lieutenant" before he be obliged to enter his plea. Upon his return, defendant told the court, "I would like to say something, Your Honor. I don't feel that this public defender represented me right. I would like to know if I could have time . . . ." At this point, the trial court interrupted defendant, ascertained that it was not defendant's desire to plead guilty, ordered the jury to be sworn and the

case proceeded. No further inquiry was made of defendant or his attorney.

After the state concluded its opening statement, defense counsel informed the court (out of the hearing of the jury) that defendant had directed him, "not to say anything, not to offer any evidence or make an opening statement." An extensive colloquy followed in which defendant complained that his attorney was attempting to make him plead guilty and that it was his feeling he could no longer trust his lawyer. Defense counsel suggested that their attorney-client relationship had been destroyed and that further communication with defendant would appear fruitless.

Defendant intimated that his "Lieutenant" had access to an attorney in Houston who, "could fly down here today if necessary." The trial court responded that it had, "no evidence at this time that you haven't been properly represented and the court finds no reason to not proceed at this time in this matter. As far as this court is concerned, Mr. Sanders is your lawyer. If you desire to try to get [privately retained counsel] you will have the opportunity over the lunch hour to do so. We are going to proceed until that time."

During the trial, defense counsel cross-examined the state's witnesses, made opening and closing statements on behalf of defendant, read a single portion of the state's exhibit to the jury but at defendant's direction, called no witnesses for the defense. Defendant never did produce a private attorney nor did he raise further complaints about his legal representation for the remainder of the trial. Defendant now maintains that when the court refused to grant a continuance to allow him to retain counsel of his choice, he was, in effect, denied due process of law under the United States Constitution, and that this denial amounted to a forfeiture of his right to effective assistance of counsel. However, defendant asserts no facts which would tend to demonstrate that his defense counsel was, in fact, ineffective.

■ *State v. Burns,* 537 S.W.2d 860 (Mo. App.1976) is dispositive of the issue now at hand. Although, that case recognizes a defendant's constitutional right to counsel as well as a fair and reasonable opportunity to obtain the counsel of his choice, it tempers that right so as not to impinge on the right of the public to effective and efficient administration of justice. Accordingly, the ultimate determination of whether a particular attorney should be permitted to withdraw as defense counsel is within the sound discretion of the trial court, as is the option to grant a continuance so as to enable a defendant to obtain substitute counsel.

■ In the case at bar, defendant had more than ten months within which to procure an attorney of his own choosing, but expressed no dissatisfaction with his counsel until after voir dire. And, although defendant suggested that his "Lieutenant" could provide an attorney, he failed to produce one. In light of the foregoing, we hold that the trial court did not abuse its discretion by denying the continuance.

■ Further, we find the court had no duty to advise defendant that he proceed *pro se.* It requires the citation of no authority to sustain the proposition that defendant would be in better hands with an appointed attorney than to proceed to trial *pro se.* There is no evidence that defense counsel was in any way ineffective or negligent, and we find no violation of defendant's constitutional right to represent himself. *State v. Burgin,* 539 S.W.2d 652 (Mo. App.1976).

Judgment affirmed.

DOWD, P. J., and REINHARD, J., concur.