310 S.E.2d 173

**STATE of West Virginia**

v.

**Thomas SHEPPARD.**

No. 15901.

Supreme Court of Appeals of
West Virginia.

Nov. 10, 1983.

Eiland & Bennett and John W. Bennett, Logan, for appellant.

Chauncey H. Browning, Jr., Atty. Gen. and S. Clark Woodroe, Asst. Atty. Gen., Charleston, for appellee.

McGRAW, Chief Justice:

Thomas Sheppard appeals from a final order of the Circuit Court of Logan County which sentenced him to three consecutive thirty-year terms of imprisonment in the penitentiary upon his conviction of two counts of kidnapping and one count of armed robbery. We find no reversible error and we affirm the conviction.

At approximately 11:00 p.m. on the night of December 19, 1978, Paul Maynard arrived for work at the Kroger store in Mount Gay, Logan County. As Maynard was walking from his car to the store, a man wearing a ski mask and brandishing a gun approached him in the parking lot and demanded that he get back in his car. The masked man got into the car with Maynard and told him that together they were going

to rob the store. During this conversation, the man removed his ski mask, allowing Maynard to get a good look at his face. Maynard later identified the assailant as the appellant.

Maynard then entered the store with the appellant. After looking around briefly, the appellant put his ski mask back on. Brandishing his pistol, he announced his intention to rob the store. He first ordered Maynard to collect the money from the cash registers in a paper bag and then demanded the money from the office. Over $2500 in cash, checks and food stamps was taken. The robber took the bag and backed out of the store, shaking hands and wishing all a Merry Christmas.

At this point Maynard dashed out of the store, escaped in his car, and headed directly to the Logan County State Police Detachment where he reported the robbery. As he was driving away, Maynard narrowly avoided a collision with a truck driven by Steve Slate, another Kroger employee. Slate parked his truck in the spot just vacated by Maynard, got out and locked the vehicle.

As Slate started toward the store, a man wearing a ski mask came out, pointed a pistol at him and told him to get back in the truck. When Slate hesitated for a moment, the man threatened to shoot a bystander. Slate opened the door to the truck and the masked man got in on the passenger side. He then moved over towards the driver's side of the cab where Slate was sitting, pointed the pistol at Slate and ordered him to drive away.

At his abductor's instruction, Slate drove first toward Holden then toward Williamson at a high rate of speed. A bystander in the Kroger parking lot followed Slate's truck in his car long enough to get the license number of the vehicle which he reported to the State Police. After a while, the masked man fired one shot into the glove compartment area of the dashboard of Slate's truck and another shot out of the truck window for effect. The man then removed the ski mask from his face and began conversing with Slate, who later identified him as the appellant. Slate even-

tually convinced the appellant to put the pistol in the glove compartment.

About fifteen minutes later the appellant ordered Slate to stop at a tavern in Delbarton to buy beer and gas. The appellant took a twenty dollar bill from the paper bag he had with him and got out of the truck with Slate. Slate knocked at the door of the tavern and when the owner appeared, the appellant began talking with him about buying a case of beer. On the pretext of going to the bathroom, Slate slipped out the side door of the tavern and ran to his truck. As Slate drove away, the appellant remarked to the tavern owner, "That feller stole my truck and everything I had."

The appellant then bought a six-pack of beer and left the tavern. Slate drove to a nearby mine and had the night watchman call the State Police. The officers who responded searched the truck and recovered the pistol the appellant had placed in the glove compartment and the bag containing all of the stolen money, checks and food stamps, with the exception of twenty dollars.

Warrants were issued for the appellant's arrest in Logan County on December 20, 1978. The following day, the appellant was arrested in Mingo County and transported by the State Police to the Logan County Jail. The appellant was taken before a Logan County magistrate and was informed of the charges against him. Although he refused to sign the acknowledgment of rights form customarily used in such proceedings, the appellant indicated a desire for appointment of counsel and an attorney was appointed to represent him. A lineup was conducted at which several persons picked out the appellant as the person who had committed the crimes.

On January 9, 1979, the Grand Jury of Logan County returned three indictments against the appellant, one of which charged him with armed robbery and the other two with the kidnappings of Steve Slate and of Paul Maynard, respectively.

At the request of defense counsel the appellant underwent psychiatric and psychological testing and evaluation in March

and May of 1979 to determine the appellant's competence to stand trial. A competency hearing was conducted on August 9, 1979, at which time both the State and the defense were permitted to introduce evidence. At the conclusion of the hearing, the circuit court found the appellant competent to stand trial.

On September 17, 1979, the defense filed a motion to recuse the circuit court judge. Pursuant to this motion, the judge voluntarily removed himself from the appellant's case and, by order entered November 2, 1979, this Court appointed the Honorable W. Jack Stevens, Judge of the Circuit Court of Lincoln County, as Special Judge to hear the appellant's case. A hearing on pretrial motions was set in December 1979, at which time the appellant moved to recuse Judge Stevens. This motion was referred to this Court for resolution. By order entered March 21, 1980, the Chief Justice found no prima facie grounds sufficient to warrant recusal and ordered Judge Stevens to proceed in the case.

A hearing on pretrial motions was conducted on April 17, 1980. At the request of defense counsel, another hearing was held on May 2, 1980, at which time the appellant's court-appointed attorneys moved to withdraw from the case, and the appellant requested appointment of other counsel. These motions were denied and the case moved to trial.

The appellant's trial was conducted on May 5 and 6, 1980. The jury returned a verdict of guilty on all three charges and the appellant was subsequently sentenced to three consecutive thirty-year terms of imprisonment in the penitentiary.

■ In this appeal, the appellant, by counsel, raises twelve assignments of error. The appellant, *pro se*, raises an additional nineteen assignments of error. The errors upon which the appellant primarily relies concern the admission of testimony relating to the out-of-court identification of the appellant at the lineup, the trial court's refusal to permit withdrawal of the appellant's court-appointed attorneys and the trial court's refusal to allow the appellant to represent himself at trial.[1]

## I

### The Out-of-Court Identification

A lineup was conducted at the Logan County Jail on December 21, 1979, two days after the robbery and shortly after the appellant's arrest in Mingo County on an unrelated charge. The appellant was transported to the Logan County Jail and was taken before a magistrate who informed him of the charges against him in Logan County. Although the appellant refused to sign the acknowledgement of rights form typically used in such proceedings, a check mark appears in the box next to the phrase "I want counsel appointed for me," and an attorney was appointed to represent the appellant.

The lineup consisted of eight men, in addition to the appellant, who were select-

---

1. The appellant raises the following assignments of error: (1) the admission into evidence at the competency hearing of the results of an EKG test conducted at Weston State Hospital; (2) the refusal of the special judge to recuse himself; (3) the refusal of the trial judge to order further psychological testing and evaluation; (4) the denial of a motion, tendered after the jury selection, for severance of trials; (5) the delay in hearing the motion for a change of venue; (6) the refusal of the trial court to conduct a roll call of defense witnesses on the second day of trial; (7) the giving of State's Instructions Nos. 1, 2 and 3, and the refusal to give Defendant's Instructions Nos. 8 and 9; (8) the State's withdrawal at the sentencing hearing of an habitual criminal information; (9) the resentencing of the appellant for purposes of enabling him to perfect an appeal. We have carefully con-

sidered each of these assignments of error in light of the record before us, and we find no grounds therefor which would warrant reversal of the appellant's conviction.

The appellant also asserts error in: his arrest; the failure of the trial court to read the indictments to the appellant prior to the first day of trial; the admission of the testimony of Dr. Lester A. Kubski at the competency hearing; the admission of the testimony of Trooper Dorsey K. Hilton at trial; a variance in the spelling of the name of the robbery victim in the indictment and the verdict form. A review of the record in this case reveals that these alleged errors were either not raised below or were expressly waived by the appellant and/or his counsel, and are therefore not subject to consideration on appeal.

**664**

ed from the jail population for their physical resemblance to the appellant. Three witnesses, Steve Slate, Jeff Hill and Martin Shell, identified the appellant as the perpetrator of the crimes. Counsel for the appellant was not notified of or present at the lineup.

An *in camera* hearing was conducted at trial to determine the propriety of the identification procedure. At the conclusion of the hearing, Slate and Hill were permitted to testify as to their out-of-court identification of the appellant. They also identified the appellant from a photograph of the lineup which was admitted at trial, but was not made part of the record. In addition, these witnesses made an in-court identification of the appellant.[2]

■ The appellant asserts that the admission of the testimony relating to the out-of-court identification of the appellant by Slate and Hill was reversible error in that the lineup was conducted in the absence of the appellant's court-appointed attorney. The issue would appear to be controlled by the principles enunciated in *State v. Gravely*, 171 W.Va. 428, 299 S.E.2d 375 (1982). In Syllabus Points 1 and 3, we held:

1. An adversary judicial criminal proceeding is instituted against a defendant where the defendant after his arrest is taken before a magistrate pursuant to *W.Va.Code*, 62–1–5 [1965], and is, *inter alia*, informed pursuant to *W.Va.Code*, 62–1–6 [1965], of the complaint against him and of his right to counsel. Furthermore, where the defendant at that magistrate proceeding expresses a desire to be represented by counsel, a subsequent pretrial identification of the defendant at a police initiated line-up or one-on-one police initiated confrontation between the defendant and a witness or crime victim,

without notice to and in the absence of defense counsel, constitutes a violation of the defendant's right to counsel under the Sixth Amendment to the Constitution of the United States and under art. III, § 14, of the Constitution of West Virginia, so as to preclude any trial testimony in regard to the identification procedure.

3. The admission at trial of the testimony of a witness that he identified an accused prior to trial at a police initiated line-up or police initiated one-on-one confrontation between the witness and the accused, which pretrial identification procedure was a violation of the accused's right to counsel under the Sixth Amendment to the Constitution of the United States and under art. III, § 14, of the Constitution of West Virginia, constitutes reversible error, unless the admission of such testimony at trial is shown to be harmless constitutional error.

■ Under *Gravely*, it is clear that once the appellant indicated his desire to have counsel appointed to represent him, it was improper for the police to initiate a lineup in the absence of counsel and, consequently, it was error for the trial court to permit Slate and Hill to testify at trial about their out-of-court identification of the appellant.[3] Under the *Gravely* analysis, the issue now becomes whether the admission of the out-of-court identification testimony constituted harmless constitutional error.

■ This Court adheres to the federal standard for determining harmless constitutional error: " 'Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt.' Syllabus Point 5, *State ex rel. Grob v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975)."

2. During the *in camera* hearing, the trial court excluded the testimony of the third lineup witness, Martin Shell, after concluding that the procedure used in obtaining his out-of-court identification of the appellant was unduly suggestive.

3. We note that there was some question raised during the *in camera* hearing as to whether the lineup was in fact initiated by the police. The trial court apparently concluded from the testi-

mony that the appellant had requested the lineup. If the lineup was conducted at the insistence of the appellant, this case would present issues not addressed by the decision in *State v. Gravely, supra.* In view of our ultimate resolution of the issue of whether the admission of the out-of-court identification testimony constituted harmless error, however, we need not address those issues or determine the correctness of the trial court's conclusion.

Syllabus Point 5, *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977).[4] *See also State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974). The critical issue in any such case is whether the apparent error resulted, beyond a reasonable doubt, in prejudice to the accused at trial. *State v. Bradley*, 164 W.Va. 68, 260 S.E.2d 830 (1979); *State v. Boyd, supra; State ex rel. Grob v. Blair, supra.*

In *State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423 (1980), the error complained of was the trial court's failure to conduct an *in camera* hearing during a recidivist proceeding on the issue of whether an in-court identification of the defendant as the person who committed the prior crimes was tainted by an unduly suggestive or improper out-of-court identification procedure. The allegedly improper identification procedure consisted of showing a photograph of the defendant, shortly before the recidivist hearing, to two police officers who later made an in-court identification of the defendant. We recognized the impropriety of the out-of-court identification procedure and the constitutional nature of the circuit court's error in failing to conduct an *in camera* hearing on the admissibility of the officers' testimony. The record showed, however, that the defendant had also been positively identified by two other witnesses who had not been shown the photographs and that the official record of the defendant's prior convictions had been introduced into evidence. The circumstances of the case led us to conclude "that the two police officers' identification testimony was harmless beyond a reasonable doubt, in light of the independent identification testimony of the other witnesses which was substantial and uncontradicted." *Id.*, 164 W.Va. at 230, 262 S.E.2d at 431.

In *State v. Bradley, supra*, we recognized that it was constitutional error for the trial court to admit into evidence a statement made by the defendant at a preliminary hearing at which his counsel was not present. We held such error to be

harmless, in part on the ground that the defendant's confession, which was properly admitted into evidence, contained the same information as did his statement at the preliminary hearing.[5] We concluded that the error was not prejudicial to the defendant in that it was not crucial to the conviction.

█ In the case at hand, we are of the opinion that the erroneous admission of the out-of-court identification was harmless. At trial, two witnesses who did not view the lineup independently identified the appellant. Paul Maynard, the first kidnapping victim, positively identified the appellant as the man in the ski mask who forced him at gunpoint to assist in the robbery of the Kroger store. Maynard testified that the appellant removed his ski mask while he was still in Maynard's car and did not replace it until after they entered the store. Maynard stated that he had a good view of the appellant's face for approximately ten minutes.

The other witness was Clifford Mahone, the owner of the tavern where Slate testified the appellant ordered him to stop for gas and beer and where Slate eventually escaped from his abductor. Mahone positively identified the appellant as the man who was with Slate that night and testified that he knew the appellant from a previous occasion when the appellant had been in his tavern and had spoken with him.

The independent in-court identifications of the appellant by these two witnesses were given with a high degree of certainty and the testimony was uncontradicted. When this testimony is coupled with the fact that all of the stolen money, with the exception of twenty dollars, was recovered from Slate's truck shortly after he effected his escape from his abductor, it is apparent that the erroneous admission of the improper out-of-court identification testimony was "merely cumulative of other overwhelming

---

4. Justice Harshbarger has indicated his disagreement with the doctrine of harmless constitutional error, a position with which Chief Justice McGraw concurs. *See State v. Kirtley*, 162 W.Va. 249, 252 S.E.2d 374, 382 (1978) (Harshbarger, J., concurring).

5. We also found it significant that the statement erroneously admitted at trial was relevant, if at all, only to the question of premeditation. Since Bradley was convicted of murder of the second degree, premeditation was not an issue on appeal.

evidence properly before the jury." *Brown v. United States,* 411 U.S. 223, 231, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208, 215 (1973), *quoted in State v. Vance, supra,* at 431. Consequently, we conclude that the improper admission of the out-of-court identification testimony was harmless beyond a reasonable doubt. Similarly, we find no reversible error in the admission of the in-court identification of the appellant by these witnesses.

## II

### Substitution of Court-appointed Counsel

The appellant's second principal assignment of error relates to the trial court's refusal to permit the appellant's court-appointed attorneys to withdraw from the case on the eve of trial. The motion was tendered on May 2, 1980 by the appellant's attorneys and alleged a complete breakdown of communications between the appellant and his counsel. The circuit court conducted a hearing on the matter at which the appellant explained that he did not trust his attorneys to represent him because they had refused to file motions on his behalf or to provide him with documents he had requested and because one of them was a friend of the assistant prosecuting attorney who was representing the State at trial. The circuit court found no merit in the appellant's allegations, concluding that his refusal to cooperate with his court-appointed attorneys was a deliberate attempt to delay the proceedings, and denied the motion for substitution of court-appointed counsel.

■■■■■ In *Watson v. Black,* 161 W.Va. 46, 239 S.E.2d 664 (1977), the Court detailed the circumstances in which an indigent criminal defendant may be entitled to a change of court-appointed counsel. In Syllabus Points 2 and 5, we held that before a defendant is entitled to appointment of new counsel, it is incumbent upon him to show good cause for the withdrawal of his court-appointed lawyer.

2. While an indigent defendant is entitled to competent counsel, he is not entitled to the appointment of any particular lawyer and may only reject representation by his court-appointed counsel for a good cause.

5. Good cause for the relief of a court-appointed counsel consists of: (1) a conflict of interest; (2) a complete breakdown in communication with court-appointed counsel after the exhaustion of good faith efforts to work with counsel; or, (3) an irreconcilable conflict which might lead to an unjust verdict.

■■■■■ *Watson* also recognized, however, that "[t]he preeminent condition precedent of a motion to change court-appointed counsel is a showing of good faith." *Id.,* 161 W.Va. at 53, 239 S.E.2d at 668. Thus, we held, at Syllabus Point 4, in part:

It is the obligation of an indigent criminal defendant to exert good faith efforts to cooperate with his court-appointed counsel and any objection which is made to court-appointed counsel which is not made in good faith need not be accepted by the trial court ....

"[B]efore any ... ground may successfully be urged as cause for removal of court-appointed counsel, it must appear that the objection to counsel has been made in good faith and not for the purpose of creating a dilemma for the trial court in order to produce endless grist for the post-conviction, habeas corpus, writ-writing mill." *Id.* at 668. Similarly, where on the eve of trial a defendant deliberately refuses to cooperate with his court-appointed counsel and seeks appointment of new counsel solely as a means of delaying the proceedings, the defendant's objection to his court-appointed attorney cannot be said to be made in good faith and the request for substitution of counsel may be denied by the trial court.

The record in this case shows that one of the appellant's court-appointed attorneys, Thomas Esposito, was appointed to represent the appellant sometime before February 1, 1979.[6] Esposito alone represented

---

6. The attorney appointed to represent the appellant at the time of his arrest on December 21,

1978, was apparently relieved from representation, although the record is silent as to when or

the appellant until May 21, 1979, at which time the trial court, at the request of Esposito, appointed Mark C. Campbell as co-counsel. Esposito and Campbell continued as the appellant's court-appointed attorneys until well after trial when they were relieved and subsequently replaced by counsel in this appeal.

The appellant first indicated dissatisfaction with Esposito and Campbell at the competency hearing held on August 9, 1979. The appellant did not expressly request appointment of other counsel, but indicated to the court "[a]t this time I am in mind to discharge the attorneys." The gist of appellant's complaint was that his counsel had failed to provide him with copies of certain documents he had requested and had failed to secure him access to the county law library.[7] It appears that the appellant was not seriously considering requesting other counsel at this time, but was using the threat of requesting withdrawal to obtain documents and access to the law library. In any event, once the appellant was assured that his requests would be honored, he apparently abandoned his complaints against his court-appointed attorneys.

No further objection to the court-appointed attorneys was raised by the appellant until May 2, 1980, the Friday before trial. At that time Esposito and Campbell formally requested substitution of court-appointed counsel on the ground that there had been a complete breakdown in the attorney-client relationship to the extent that the appellant would not even confer with them concerning his defense. The appellant was permitted to take the stand and testify as to the reasons for his dissatisfaction with Esposito and Campbell. The appellant asserted that his attorneys had failed to file motions on his behalf and that they had failed to provide him with documents in support of his motion to recuse the trial judge. The appellant further alleged a conflict of interest resulting from Campbell's

friendly relationship with the assistant prosecuting attorney who was conducting the State's case.

The circuit court found that the appellant's criticisms of the performance of his court-appointed attorneys were unjustified. The appellant did not specify the motions counsel had failed to make, and the documents he alleged he had been refused related to a matter which had already been decided. The circuit court also inquired into Campbell's relationship with the assistant prosecuting attorney and discovered that although the two were friends and occasionally shared living quarters, Campbell was not involved in the prosecutor's law practice or in his campaign for the office of prosecuting attorney. The court refused to order the appointment of new counsel to represent the appellant. Noting that both court-appointed attorneys were qualified and competent counsel and that the appellant had expressed no dissatisfaction with their performance at the hearing held on April 17, 1980, the circuit court expressed the opinion that appointment of new counsel would only result in postponement of the proceedings and the setting of a new trial date at which time the appellant would again seek substitution of counsel. To this, the appellant replied, "Yes unless they give me competent counsel."

Upon this record we cannot say that the trial court abused its discretion in refusing to allow the appellant's court-appointed attorneys to withdraw from the case. The appellant's complaints about counsel's performance were not sufficiently serious to warrant their removal from the case. "[A] lawyer is not required to do things which are obviously harmful to the client's interests or which are obviously absurd." *Watson v. Black, supra,* 161 W.Va. at 53, 239 S.E.2d at 668. A disagreement over tactics or mere dissatisfaction with the services of court-appointed counsel does not, by itself, entitle the defendant to appointment of new counsel.

for what reason this substitution of counsel occurred.

7. Campbell also indicated on the record that he and Esposito were hampered in preparing a

defense by the appellant's assertion that he could not remember anything that happened on the night of the commission of the crimes.

*State v. Pepperling,* 177 Mont. 464, 582 P.2d 341 (1978); *State v. Hutchins,* 303 N.C. 321, 279 S.E.2d 788 (1981). Nor was the alleged conflict resulting from Campbell's friendship with the prosecuting attorney shown to have any effect on Campbell's competence as an advocate or to present any likelihood of prejudice to the appellant's defense. *See State v. Thacker,* 301 N.C. 348, 271 S.E.2d 252 (1980).

■ More importantly, however, we cannot say that the trial court abused its discretion in finding that the appellant deliberately refused to cooperate with his attorneys as a means of creating delay in the proceedings. The record in this case shows that the breakdown in communication between the appellant and his court-appointed attorneys did not occur until the eve of trial, over sixteen months after Esposito was appointed to represent the appellant and almost one year after Campbell's appointment as co-counsel. The appellant had expressed dissatisfaction with the performance of his attorneys on only one prior occasion, nearly eight months before. Thereafter, he accepted in their representation of him and gave no hint as late as three weeks before trial that he was dissatisfied with their performance. The record also shows that the appellant was no stranger to the intricacies of the criminal law and was well aware that his request for substitution of counsel could result in further delay of the proceedings. In these circumstances, we must conclude that there was no error in the trial court's denial of the motion for substitution of counsel.

■ After the trial court refused to grant the motion for substitution of counsel, the appellant's court-appointed attorneys requested a continuance of trial so that they might present the issue to this Court on Monday, May 5, 1980. The trial court refused to delay the commencement of trial any further. The appellant's attorneys then indicated that one of them would probably appear at the beginning of trial and the other argue the matter before this Court. The trial court found this solution acceptable. On the first day of trial, however, both attorneys appeared before the court and indicated that although they were not waiving any right of the appellant to object to the denial of the motion for substitution of counsel, they felt that the appellant's trial commanded the presence of both of them.

The appellant now asserts that it was error for the trial court to refuse the motion for a continuance in order to permit resolution by this Court of the question of whether the court had erroneously denied the motion for substitution of counsel. "The granting of a continuance is a matter within the sound discretion of the trial court ... and the refusal thereof is not ground for reversal unless it is made to appear that the court abused its discretion, and that its refusal has worked injury and prejudice to the rights of the party in whose behalf the motion was made." Syl. pt. 1, *State v. Jones,* 84 W.Va. 85, 99 S.E. 271 (1919), *quoted in State v. Bush,* 163 W.Va. 168, 255 S.E.2d 539, 544 (1979). In view of our holding that the denial of the motion for substitution of counsel did not constitute reversible error, there was no injury or prejudice to the rights of the appellant and any error in the trial court's refusal to grant a continuance in this instance must be viewed as harmless.

■ Before moving on to the appellant's other assignments of error, we note that throughout the proceedings below and in this appeal, the appellant repeatedly objected to the manner in which his attorneys were appointed to represent him. He assigns as error the failure of the judges involved in his trial and post-conviction proceedings to consult with him before appointing counsel and to make such appointment in open court in the presence of the appellant and with his consent. As we noted earlier, an indigent defendant, while entitled to appointment of counsel, is not entitled to the appointment of a lawyer of his own choosing. *Watson v. Black, supra.* The duty of the trial court in this respect is only to insure that the accused is effectively represented "by a lawyer reasonably skilled and experienced in the practice of criminal law." *Id.,* 161 W.Va. at 52, 239 S.E.2d at 668 (citing *State v. Thomas,*

157 W.Va. 640, 203 S.E.2d 445 (1974)). Nor are we aware of any constitutional or statutory right of an indigent defendant to have counsel appointed in open court in his presence, conditional upon his acceptance of that particular lawyer.

## III

### *The Right of Self-representation*

The appellant's third major assignment of error relates to the trial court's refusal to allow him to represent himself at trial. The question arose on the first day of trial at an *in camera* hearing held prior to the jury selection. At that time, the appellant again raised objections to his court-appointed attorneys, stating that, in his opinion, they did not represent him and that he would prefer to represent himself. The appellant refused, however, to waive his right to assistance of counsel. The trial court refused to dismiss the appellant's court-appointed attorneys or to allow the appellant to defend without the assistance of counsel and instructed the appellant that he would be represented at trial by his court-appointed attorneys. Pursuant to a request by the appellant, the trial court informed the jury of the appellant's dissatisfaction with his court-appointed attorneys and of the court's decision to require counsel to appear and defend on the appellant's behalf. Trial then proceeded with court-appointed counsel conducting the appellant's defense. The appellant asserts that in forcing him to accept the assistance of counsel against his will, the trial court violated his right to represent himself.

It has long been recognized in this jurisdiction that an accused has a constitutional right to defend himself in a criminal proceeding without the assistance of counsel. In *State v. Yoes*, 67 W.Va. 546, 68 S.E. 181 (1910), *overruled on other grounds, State ex rel. May v. Boles*, 149 W.Va. 155, 139 S.E.2d 177 (1964), the right

of self-representation was held to be a correlative of the right to assistance of counsel guaranteed by article III, section 14 of the West Virginia Constitution. This characterization of the right of self-representation was reaffirmed in *State v. Blosser*, 158 W.Va. 164, 207 S.E.2d 186 (1974), where the Court stated:

"[N]o one is compelled to have counsel if the does not so choose. The right [to assistance of counsel] is permissive and conditional upon the pleasure of the accused; preferring the protection of the court, or choosing to rely upon his own skill and ability, he may not desire the assistance of counsel. The right of a party to appear in his own behalf and be heard in the courts is fundamental. It is an inalienable right common to all, guaranteed by both the constitution of the state and the Constitution of the United States."

207 S.E.2d at 189 (quoting 5 M.J. *Criminal Procedure* § 41 (1949)). The right of self-representation has been asserted in civil proceedings as well. *See Sisler v. Hawkins*, 158 W.Va. 1034, 217 S.E.2d 60 (1975); *West Virginia State Bar v. Earley*, 144 W.Va. 504, 109 S.E.2d 420 (1959).

In *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court held that the refusal of the trial court to permit a defendant in a state criminal proceeding to represent himself without the assistance of counsel constituted a denial of an accused's independent right of self-representation, which is implied in the structure of the Sixth Amendment and is applicable to criminal defendants in state courts through the Fourteenth Amendment. The *Faretta* decision discussed the existence of the constitutional right of self-representation as a general principle, but left unresolved serious practical questions involved in the implementation of the right at trial.[8] The

---

8. This was one of the dissenters' primary criticisms of the majority opinion in *Faretta*. In his dissenting opinion, Justice Blackmun wrote:

In conclusion, I note briefly the procedural problems that, I suspect, today's decision will visit upon trial courts in the future. Although

the Court indicates that a *pro se* defendant necessarily waives any claim he might otherwise make of ineffective assistance of counsel, *ante* [422 U.S. at 834, 95 S.Ct. at 2541] n. 46, the opinion leaves open a host of other procedural questions .... I assume that many of

development of procedural standards governing the assertion and exercise of the right of self-representation was left largely to the state courts.

■ ■ ■ The *Faretta* decision implicity recognized that the right of an accused to represent himself without the assistance of counsel is not an absolute right. Rather, the right of self-representation is a qualified right and its exercise is subject to reasonable restrictions designed to further two important considerations: protection of other fundamental rights guaranteed the accused by the Constitution, and protection of the orderly administration of the judicial process. *See Faretta v. California, supra,* 422 U.S. at 835, 95 S.Ct. at 2541; *United States v. Coupez,* 603 F.2d 1347 (9th Cir.1979); *People v. Anderson,* 398 Mich. 361, 247 N.W.2d 857 (1976). Thus, there is no requirement that the trial court, *sua sponte,* advise the accused of his right of self-representation. *People v. Salazar,* 74 Cal.App.3d 875, 141 Cal.Rptr. 753 (1977); *People v. Clark,* 94 Ill.App.3d 295, 49 Ill. Dec. 871, 418 N.E.2d 891 (1980); *Russell v. State,* 270 Ind. 55, 383 N.E.2d 309 (1978); *State v. Stinson,* 424 A.2d 327 (Me.1981); *State v. Gregory,* 595 S.W.2d 798 (Mo.App. 1980); *Block v. State,* 95 Nev. 933, 604 P.2d 338 (1979); *State v. Hutchins,* 303 N.C. 321, 279 S.E.2d 788 (1981). To be entitled, as a matter of right, to represent himself without the assistance of counsel, the defendant must make a timely and unequivocal assertion of the right. The failure to make a timely and unequivocal demand places the decision within the discretion of the trial court. *Barnes v. State,* 258 Ark. 565, 528 S.W.2d 370 (1975); *People v. Windham,* 19 Cal.3d 121, 137 Cal. Rptr. 8, 560 P.2d 1187, *cert. denied,* 434 U.S. 848, 98 S.Ct. 157, 54 L.Ed.2d 116, *reh. denied,* 434 U.S. 961, 98 S.Ct. 495, 54 L.Ed.2d 322 (1977); *State v. Hegwood,* 345 So.2d 1179 (La.1977); *Commonwealth v.*

*Miller,* 6 Mass.App. 959, 383 N.E.2d 1144 (1978); *State v. Fritz,* 21 Wash.App. 354, 585 P.2d 173 (1978).

■ ■ ■ An accused who asserts his right to represent himself without the assistance of counsel is required to comply with all the technical rules of procedural, substantive and evidentiary law in conducting his defense. *Faretta v. California, supra; Smith v. State,* 267 Ind. 167, 368 N.E.2d 1154 (1977); *State v. Cronin,* 299 N.C. 229, 262 S.E.2d 277 (1980); *Bowen v. State,* 606 P.2d 589 (Okl.Cr.1980); *Williams v. State,* 549 S.W.2d 183 (Tex.Cr. App.1977); *State v. Hoff,* 31 Wash.App. 809, 644 P.2d 763, *cert. dismissed,* 459 U.S. 1093, 103 S.Ct. 583, 74 L.Ed.2d 942 (1982). A defendant may not assert or exercise the right of self-representation as a means of unduly delaying the proceedings. *People v. Barnes,* 636 P.2d 1323 (Colo.App.1981); *German v. State,* 268 Ind. 67, 373 N.E.2d 880 (1978), *Parish v. State,* 632 S.W.2d 200 (Tex.App.1982); *State v. Fritz, supra.* And the trial court may terminate the defendant's self-representation where the defendant, after warnings from the trial court, engages in disruptive and obstructionist conduct. *Faretta v. California, supra; People v. Manson,* 71 Cal.App.3d 1, 139 Cal.Rptr. 275 (1977) *cert. denied,* 435 U.S. 953, 98 S.Ct. 1582, 55 L.Ed.2d 803 (1978); *People v. Heidelberg,* 33 Ill.App.3d 574, 338 N.E.2d 56 (1975); *German v. State, supra; Commonwealth v. Africa,* 466 Pa. 603, 353 A.2d 855 (1976).[9] Finally, a defendant who validly elects to represent himself in a criminal proceeding cannot thereafter complain of ineffective assistance of counsel. *Faretta v. California, supra; United States ex rel. Smith v. Pavich,* 568 F.2d 33 (7th Cir.1978); *People v. Lucero,* 200 Colo. 335, 615 P.2d 660 (1980); *Mullins v. Lavoie,* 249 Ga. 411, 290 S.E.2d 472 (1982); *People v. Heidelberg,*

these questions will be answered with finality in due course. Many of them, however, ... will haunt the trial of every defendant who elects to exercise his right to self-representation.

422 U.S. at 852, 95 S.Ct. at 2549 (Blackmun, J., dissenting).

9. However, denial of the right of self-representation cannot ordinarily be justified solely on the ground that the trial court *anticipates* disruptive behavior on the part of the defendant. *See People v. Freeman,* 76 Cal.App.3d 302, 142 Cal. Rptr. 806 (1977); *Commonwealth v. Africa, supra.*

*supra; State v. Brincefield,* 43 N.C.App. 49, 258 S.E.2d 81 (1979); *Berry v. State,* 552 P.2d 87 (Okl.Cr.1976); *Williams v. State, supra.*

■ Once the defendant expresses a timely and unequivocal desire to represent himself without the assistance of counsel, it must be ascertained whether the defendant's election to proceed *pro se* is made knowingly and intelligently. As the Supreme Court stated in *Faretta v. California, supra:*

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. *Johnson v. Zerbst* [304 U.S. 458, 464–465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)]. Cf. *Von Moltke v. Gillies,* 332 U.S. 708, 723–724, 68 S.Ct. 316, 323, 92 L.Ed. 309 [(1948)] (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Adams v. United States ex rel. McCann,* [317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)].

422 U.S. at 835, 95 S.Ct. at 2541.

■ The determination of whether an accused has knowingly and intelligently elected to proceed without the assistance of counsel depends on the facts and circumstances of the case. *People v. Anderson,* 398 Mich. 361, 247 N.W.2d 857 (1976). The test in such cases is not the wisdom of the accused's decision to represent himself or its effect upon the expeditious administration of justice, but, rather, whether the defendant is aware of the dangers of self-representation and clearly intends to waive the rights he relinquishes by electing to proceed *pro se. Barnes v. State,* 258 Ark. 565, 528 S.W.2d 370 (1975); *Johnson v.*

*State,* 556 P.2d 1285 (Okl.Cr.1976). To this end, the trial court is required to conduct, on the record and out of the presence of the jury, an inquiry of the defendant, informing him of his rights and of the possible consequences of self-representation. *Costello v. Carlisle,* 413 So.2d 834 (Fla. App.1982); *Snead v. State,* 286 Md. 122, 406 A.2d 98 (1979).

■ It is the primary duty of the trial court in conducting its inquiry to ascertain whether the defendant is cognizant of and willing to relinquish his right to assistance of counsel, since there can be no valid exercise of the right of self-representation absent a competent and intelligent waiver of the right to counsel. *Commonwealth v. Glover,* 247 Pa.Super. 465, 372 A.2d 919 (1977). As our Court stated in Syllabus Point 2 of *State v. Blosser, supra:*

> An accused may represent himself in a criminal proceeding, but the election to do so must be predicated upon an intelligent and understanding waiver by the accused of the fundamental right to effective assistance of counsel upon a full and fair disclosure and explanation by the trial court of the constitutional right to counsel.

The trial court should also insure that the accused is aware of the nature, complexity and seriousness of the charges against him and of the possible penalties that might be imposed. *Leak v. Graves,* 261 Ark. 619, 550 S.W.2d 179 (1977); *People v. Lopez,* 71 Cal.App.3d 568, 138 Cal.Rptr. 36 (1977); *Commonwealth v. Davis,* 479 Pa. 274, 388 A.2d 324 (1978).

■ It is incumbent upon the trial court to warn the accused of the "dangers and disadvantages of self-representation" *Faretta v. California, supra; State v. Ruple,* 631 P.2d 874 (Utah 1981). In this context it has been held that the trial court has an obligation to warn the accused that self-representation is almost always detrimental, that he will be afforded no special indulgence or advocacy privileges by the court; that he will be subject to all the technical rules of substantive, procedural and evidentiary law; that the prosecution

will be represented by an experienced attorney; that misbehavior or disruption at trial may vacate his right to represent himself; and that in spite of his efforts he cannot later claim ineffective assistance of counsel. *People v. Lopez, supra; State v. Quinn,* 565 S.W.2d 665 (Mo.App.1978). *See generally Annot.* 98 A.L.R.3d 13 (1980). In addition, the trial court should advise the defendant that he waives his right to refuse to testify by going outside the scope of argument and testifying directly to the jury. *Jones v. State,* 381 So.2d 983 (Miss.1980).

 Finally, the trial court should make some inquiry into the defendant's intelligence and capacity to appreciate the consequences of his decision. In this respect, the defendant's background, education, experience and familiarity with the legal system are relevant considerations in the trial court's determination of the validity of the defendant's election to proceed *pro se.* *See Faretta v. California, supra; Leak v. Graves, supra; People v. Miller,* 110 Cal. App.3d 327, 167 Cal.Rptr. 816 (1980); *State v. Bell,* 381 So.2d 393 (La.1980); *State v. Ahearn,* 137 Vt. 253, 403 A.2d 696 (1979); *State v. Fritz,* 21 Wash.App. 354, 585 P.2d 173 (1978). However, the technical legal knowledge of a defendant who wishes to represent himself at trial is not relevant to the question of whether his election to proceed *pro se* was intelligently and knowingly made. *Faretta v. California, supra; People v. Freeman,* 76 Cal.App.3d 302, 142 Cal.Rptr. 806 (1977); *State v. Cunningham,* 222 Kan. 704, 567 P.2d 879 (1977); *State v. Fritz, supra.*

 In sum, then, a defendant in a criminal proceeding who is mentally competent and *sui juris,* has a constitutional right to appear and defend in person without the assistance of counsel, provided that (1) he voices his desire to represent himself in a timely and unequivocal manner; (2) he elects to do so with full knowledge and understanding of his rights and of the risks involved in self-representation; and (3) he exercises the right in a manner which does not disrupt or create undue delay at trial.

 Turning to the case at hand, we are of the opinion that the trial court did not err in requiring the appellant to be represented at trial by his court-appointed attorneys. First, we have some question as to whether the appellant's demand that he be allowed to represent himself was made in a timely manner. The request was not tendered until the morning of trial and was apparently the result of the trial court's refusal to permit the appellant's court-appointed attorneys to withdraw. That matter had been thoroughly argued at the hearing held two days before, at which time the appellant gave no indication that he wished to represent himself. As a general rule, where the request to defend without the assistance of counsel is made in the first instance on the morning of trial, the defendant's right to appear and defend in person depends on the facts and circumstances of each case and is ordinarily a matter within the discretion of the trial court. *Barnes v. State, supra; People v. Windham,* 19 Cal.3d 121, 137 Cal.Rptr. 8, 560 P.2d 1187, *cert. denied,* 434 U.S. 848, 98 S.Ct. 157, 54 L.Ed.2d 116, *reh. denied,* 434 U.S. 961, 98 S.Ct. 495, 54 L.Ed.2d 322 (1977); *State v. Hegwood,* 345 So.2d 1179 (La.1977); *State v. Fritz,* 21 Wash.App. 354, 585 P.2d 173 (1978).[10] We cannot say that the trial court abused its discretion in denying the appellant's request as untimely.

 Even if we were to hold that the appellant's request was timely made, we think it is clear that it cannot be characterized as an unequivocal demand. Although the appellant stated that he wished to represent himself at trial, he also clearly indicated that he had no intention of waiving his right to the assistance of counsel. As we held in *State v. Blosser, supra,* a defendant may not be permitted to exercise his right of self-representation absent an intel-

**10.** *But see Chapman v. United States,* 553 F.2d 886 (5th Cir.1977) and *Baker v. State,* 97 Nev. 634, 637 P.2d 1217 (1981) (demand made anytime before jury impanelled held timely). *Compare Russell v. State,* 270 Ind. 55, 383 N.E.2d 309 (1978) and *Webb v. State,* 533 S.W.2d 780 (Tex. Cr.App.1976) (demand made on day of trial held *per se* untimely).

ligent and understanding waiver of the right to counsel. In addition, as we noted above, the appellant's demand to defend *pro se* appears to have resulted more from the trial court's denial of the appellant's request for appointment of other counsel than from any genuine desire to represent himself without the assistance of counsel. In these circumstances, we find no error in the trial court's refusal to allow the appellant to defend himself at trial.

■ The appellant also asserts that the trial court committed reversible error in failing to conduct an extensive inquiry into the validity of the appellant's election to represent himself. It has been held, however, that where a defendant does not make a timely and unequivocal demand to exercise the right of self-representation, the trial court need not conduct a detailed hearing on the issue of whether the demand was knowingly and intelligently made. *Russell v. State*, 270 Ind. 55, 383 N.E.2d 309 (1978); *State v. Burgin*, 539 S.W.2d 652 (Mo.App.1976).

The appellant also asserts that his right of self-representation was infringed by the trial court's refusal to permit him to act as co-counsel. This request was made by the appellant after the trial court initially refused to allow the appellant to defend *pro se*. The appellant then requested permission to address the jury personally as co-counsel. The trial court initially indicated that he would permit the appellant some limited right to speak to the jury. After jury selection was completed, however, the trial court, upon further reflection, ruled that the appellant would not be permitted to make opening or closing remarks or to question witnesses and that any questions or statements the appellant had should be directed to the witnesses or the jury through his counsel.

At the close of the State's case, the appellant requested that the defense witnesses be dismissed and that he be allowed to take the witness stand in order to explain to the jury the reason for his failure to put on a defense. The trial court cautioned the appellant against dismissing his witnesses and informed him at length of his right not

to testify. During this exchange the appellant indicated that he did not wish to be interrogated on the stand or to relinquish his right to refuse to testify, but that he only wished to inform the jury of his reasons for not producing defense witnesses. The trial court refused to allow the appellant to address the jury on these conditions, informing him that if he took the stand he would be subject to cross-examination by the State. The appellant then refused, despite further cautioning by the trial court, to allow his attorneys to present any defense witnesses. The court again refused to dismiss the appellant's court-appointed attorneys and the case was submitted to the jury.

■ While the defendant has a constitutional right to represent himself without the assistance of counsel, he is not entitled, as a matter of right to appear as co-counsel. *United States v. Cyphers*, 556 F.2d 630; *cert. denied*, 431 U.S. 972, 97 S.Ct. 2937, 53 L.Ed.2d 1070 (1977), *cert. denied*, 436 U.S. 950, 98 S.Ct. 2858, 56 L.Ed.2d 792 (1978); *State v. McCleary*, 149 N.J.Super. 77, 373 A.2d 400 (1977). The right of an accused who is represented by counsel to participate personally in his defense by examining witnesses or addressing the jury is ordinarily a matter within the discretion of the trial court. *State v. Moorefield*, 33 N.C.App. 37, 234 S.E.2d 25 (1977); *State v. Burgin*, 539 S.W.2d 652 (Mo.App.1976); *State v. Carr*, 13 Wash. App. 704, 537 P.2d 844 (1975). Here we find no abuse of discretion in the trial court's refusal to permit the appellant to act as co-counsel. Nor do we find error in the trial court's refusal to allow the appellant to dictate the conditions under which he would address the jury. *See Hollis v. State*, 95 Nev. 664, 601 P.2d 62 (1979).

■ One final matter is raised by the appellant in this context. The appellant asserts that the trial court erred in permitting the appellant to dismiss the defense witnesses. He asserts that his request to dismiss those witnesses was conditional upon his being granted the opportunity to address the jury in person. Consequently, he contends, the trial court erred in dis-

missing the witnesses once it was decided that the appellant would not be permitted to speak to the jury.

The record does not support this contention. After the trial court denied the appellant's request, the judge again warned the appellant against dismissing the defense witnesses and permitting the case to go to the jury on the State's evidence alone. The appellant adamantly refused to allow his attorneys to put on a defense for him. In view of these facts, we find no error in the trial court's decision to allow the appellant to dismiss the defense witnesses.

## IV

The appellant also raises a number of assignments of error which warrant our attention but which can be disposed of briefly.

### Ineffective Assistance of Counsel

The appellant asserts that his court-appointed attorneys were ineffective in that they failed to file motions on his behalf, to provide him with copies of documents and court records and to secure witnesses necessary to his defense and to intervene on the appellant's behalf with regard to jail conditions. The appellant further asserts that his court-appointed attorneys were acting at the direction of the prosecuting attorney and were part of a conspiracy to convict the appellant.

In *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974), we discussed in detail the consideration to be given to claims of ineffective assistance of counsel raised in a direct appeal of a criminal conviction. One of the fundamental requirements relating to an appellant's assertion of an ineffectiveness claim was stated in Syllabus Point 22: "One who charges on appeal that his trial counsel was ineffective and that such resulted in his conviction, must prove the allegation by a preponderance of the evidence." The same standard is applicable to proceedings for habeas corpus relief in which ineffective assistance of counsel is claimed. *See State ex rel. Scott v. Boles*, 150 W.Va. 453, 147 S.E.2d 486 (1966).

In the instant case, the record is devoid of any evidence to support the appellant's claim of ineffective assistance of counsel. There is no evidence whatever to support the appellant's most serious allegation, i.e., that his court-appointed attorneys were acting in an improper and unethical manner in conjunction with the prosecuting attorney to obtain the appellant's conviction. Other allegations are not specific enough to be subject to resolution in this appeal. For example, although the appellant alleges his court-appointed attorneys failed to file motions on his behalf, the only one he specifically mentions is a motion to suppress photographs of the appellant which the prosecution did not attempt to bring before the court or place in evidence. The validity of other of the appellant's allegations, such as his assertion that counsel failed to provide the appellant with documents and to secure witnesses important to his defense, cannot be determined from the state of the record before us. Still other actions of the appellant's attorneys which are documented in the record, such as counsel's waiver of the reading of the indictments at the arraignment, do not, in and of themselves, amount to ineffective assistance of counsel nor do they appear to have contributed to his conviction. In view of the paucity of evidence in the record to support the appellant's claim, we must conclude that the appellant has not demonstrated by a preponderance of the evidence that his court-appointed attorneys were ineffective or that ineffective assistance of counsel resulted in his conviction.

### The Failure to Conduct a Preliminary Hearing

In *State ex rel. Rowe v. Ferguson*, 165 W.Va. 183, 268 S.E.2d 45 (1980), we held that an accused who is arrested for an indictable offense is entitled to a preliminary hearing under the provisions of W.Va. Code § 62–1–8 (1977 Replacement Vol.) prior to presentation of the offense to the grand jury, but that under the statute, no such right exists once an indictment has been returned against the accused. Since there is no constitutional right to a prelimi-

nary hearing,[11] and since the appellant here was properly indicted by a Logan County grand jury less than three weeks after his arrest, the failure to afford him a preliminary hearing does not constitute grounds for reversing his conviction. *See Guthrie v. Boles,* 261 F.Supp. 852 (N.D.W.Va.1967).

## The Failure to Furnish Copies of the Indictments and Warrants

■ Although the appellant alleges at one point in his brief that he has never received copies of these documents, it is clear from the record and from other assertions of the appellant that he was provided with copies of both the indictments and arrest warrants in August 1979. The appellant asserts that the eight-month delay in furnishing him these documents constitutes reversible error.

W.Va.Code § 62–3–1 [1977], which was in effect at the time, provides, in pertinent part: "A copy of the indictment and of the list of jurors selected or summoned for his trial ... shall be furnished him, *upon his request, at any time before the jury is impaneled.*" (Emphasis added) The record reveals that the appellant did not request copies of the indictments until August 1979 and that production of those documents was promptly ordered and accomplished. Our research reveals no similar statute or constitutional provision requiring that a defendant in a criminal case be provided with copies of the warrants for his arrest. However, in view of the fact that the appellant's request for copies of the arrest warrants was honored some eight months before his trial, and since no discrepancy or irregularity in the warrants is alleged, we find no error in the failure to provide the appellant copies of the warrants before August 1979.

## The Refusal to Permit a Polygraph Test

■ At the conclusion of the competency hearing, the appellant requested that he be permitted to take a polygraph test to refute the findings of the medical experts to the effect that the appellant was pretending to suffer from amnesia. In *State v. Frazier,* 162 W.Va. 602, 252 S.E.2d 39 (1979), we discussed at length the scientific value and reliability of the polygraph test and concluded that polygraph test results are not admissible for any purpose at a criminal trial. Since we are of the opinion that it would have been error for the circuit court to consider the results of a polygraph test in making its determination of the appellant's mental competence, we find no error in the court's refusal to permit the appellant to take the test.

## The Refusal to Grant a Continuance

■ At the *in camera* hearing conducted on the morning of the first day of trial, counsel for the appellant requested a continuance to enable them to contact and interview certain witnesses whose testimony the appellant felt was material to his defense. Counsel stated that the appellant had first given them the names and addresses of these witnesses and requested their presence at trial on the previous Friday afternoon after the hearing on the motion for substitution of counsel. Counsel further stated that the witnesses apparently lived in North Carolina, although they were not certain of that fact, and that all other defense witnesses had been subpoenaed. The motion for a continuance was denied as untimely.

"A motion for a continuance based on the absence of a material witness is addressed to the sound discretion of the trial court, and its ruling on such motion will not be disturbed unless it is clearly wrong and it appears that such discretion has been abused." Syllabus Point 1, *State v. Chaffin,* 156 W.Va. 264, 192 S.E.2d 728 (1972).

Syllabus Point 3, *State v. Vance,* 168 W.Va. 666, 285 S.E.2d 437 (1981). "To warrant a continuance on the basis of the absence of a material witness, it is necessary to show the use of due diligence to procure the attendance of the witness and also the materiality and importance of his evidence to the issues to be tried. *State v.*

11. *State v. Stout,* 169 W.Va. 90, 285 S.E.2d 892 (1982); *State ex rel. Rowe v. Ferguson, supra; Gibson v. McKenzie,* 163 W.Va. 615, 259 S.E.2d 616 (1979); *Lycans v. Bordenkircher,* 159 W.Va. 137, 222 S.E.2d 14 (1975).

*Burdette,* 135 W.Va. 312, 63 S.E.2d 69 (1951)." *Id.,* at 442.

In the instant case there was no showing of due diligence to secure the attendance of the witnesses the appellant requested. Counsel for the appellant had apparently not intended to call those witnesses until the appellant requested their attendance on the Friday prior to trial. Counsel subsequently stated that they were not certain where the witnesses lived and that they were unaware of any method to obtain service on such short notice. Moreover, it appears that the testimony of the absent witnesses was, in substance, the same as that of the defense witness which had been subpoenaed to testify. Consequently, we find no error in the trial court's denial of the appellant's motion for a continuance.

In conclusion, for the reasons stated herein, we find no error in the proceedings had against the appellant in the Circuit Court of Logan County which would warrant reversal of the appellant's conviction. The judgment of the circuit court is affirmed.

Affirmed.