336 S.E.2d 535

**STATE of West Virginia**

v.

**Bernard SANDLER.**

No. 16219.

Supreme Court of Appeals of
West Virginia.

Oct. 30, 1985.

**573**

H. Wyatt Hanna, Asst. Atty. Gen., Doren Burrell, Charleston, for appellant.

Steven M. Askin, David P. Greenburg, Askin, Pill, Scales & Burke, Martinsburg, for appellee.

**BROTHERTON, Justice:**

The appellant, Bernard Sandler, was convicted of driving under the influence of alcohol upon a public highway in violation of W.Va.Code § 17C–5–2 (1976) by the Circuit Court of Jefferson County, West Virginia. He now appeals that conviction, alleging multiple errors. We find merit in these allegations, and reverse the conviction, remanding for a new trial.

Mr. Sandler was arrested for driving under the influence of alcohol on July 1, 1981. He submitted to a breath test, which showed a .14 blood alcohol level. In accordance with routine procedure, neither a sample of the appellant's breath nor the ampoule used in the breathalyzer test was preserved.

The court appointed counsel to represent Mr. Sandler and he was fully and adequately represented in two trials in magistrate court, the first resulting in a hung jury, and the second in a conviction. He appealed this conviction to the Circuit Court of Jefferson County. On the day of his trial, the appellant indicated to the trial judge that he was dissatisfied with his counsel. In a conference with the court ten minutes before trial, the petitioner was given a choice by the court to either proceed with the counsel he had or defend *pro se*. The appellant elected to proceed *pro se* and his attorney was appointed to stand beside him as an advisor. Mr. Sandler's ignorance of the rules of procedure and evidence caused a difficult trial with numerous objections and interruptions.

After the jurors had retired, they sent out a note requesting more evidence. The trial court allowed the prosecution to reopen to respond to the jury's request. The reopening resulted in a witness being recalled to the stand and examined by the court as well as by the prosecutor. The jury again retired, and returned a verdict of guilty, from which the appellant now appeals.

I.

The appellant asserts as his first point of error that the court should have continued the trial to allow him to obtain new counsel. In order to have court-appointed counsel dismissed, an accused must first show good cause. This Court has identified only three instances of good cause: "(1) a conflict of interest; (2) a complete breakdown in communication with court-appointed counsel after exhaustion of good faith efforts to work with counsel; or, (3) an irreconcilable conflict which might lead to an unjust verdict." Syl. pt. 5, *Watson v. Black*, 161 W.Va. 46, 239 S.E.2d 664 (1977).

In this case, Mr. Sandler was hesitant about his counsel because his attorney had advised him to accept the prosecutor's offer of a plea bargain in the matter. Negotiating a favorable plea bargain is an integral part of a defense attorney's job and certainly does not fall within the parameters of good cause for dismissal as outlined above. Nor does the record reflect any other conflict or breakdown in communication that would justify removal of the appointed attorney. Therefore, the

trial court was correct in refusing the appellant's motion for new counsel.

The appellant presents a much stronger argument, however, that the trial judge failed to adequately warn him of the dangers of proceeding *pro se.* In *State v. Sheppard,* 172 W.Va. 656, 310 S.E.2d 173 (1983), this Court set out guidelines for trial courts in dealing with an accused who wishes to defend himself. Briefly, those guidelines direct the trial judge:

1. To ascertain if the defendant is cognizant of and willing to relinquish his right to assistance of counsel.

2. To insure that the accused is aware of the nature, complexity and seriousness of the charges against him and of the possible penalties that might be imposed.

3. To warn the accused of the danger and disadvantages of self-representation. (e.g., that self-representation is almost always detrimental and that he will be subject to all the technical rules of evidence and procedure, the same as if he had been represented by counsel.)

4. To advise the defendant that he waives his right to refuse to testify by going outside the scope of argument and testifying directly to the jury.

5. To make some inquiry into the defendant's intelligence and capacity to appreciate the consequences of his decision.

172 W.Va. at 671–672, 310 S.E.2d at 188–89.

■ These guidelines are not mandatory. The omission of one or more of the warnings in a particular case would not necessarily require reversal, so long as it is apparent from the record that the defendant made a truly intelligent and knowledgeable waiver of his right to counsel. "The determination of whether an accused has knowingly and intelligently elected to proceed without the assistance of counsel depends on the facts and circumstances of the case. The test in such cases is not the wisdom of the accused's decision to represent himself or its effect upon the expeditious administration of justice, but, rather, whether the defendant is aware of the dangers of self-representation and clearly intends to waive the rights he relinquishes by electing to proceed *pro se.*" *State v. Sheppard,* 172 W.Va. 656, 310 S.E.2d 173, 188 (1983) (citations omitted). Unfortunately, such a showing was not made on the record in this case.

■ Little effort was made by the trial court to warn the defendant of the danger in proceeding without an attorney. Instead, the trial court warned only that the defendant could not make any personal appeals to the jury. We cannot say from this record that the defendant was truly aware of the perils of self-representation.[1] Somewhat more is required by *State v. Sheppard.*[2]

## II.

■ The appellant claims that because the police did not preserve the ampoule in which the breath sample was taken or the breath sample itself that his due process

---

1. The trial court's warnings to the defendant were as follows:

   COURT:

   (I)f you wish to speak personally to the jury, if you are representing yourself, you may do so. You may make no personal appeals to their sympathy or to any matters that are not specifically related to this case. You may not, for instance, state that, "If I lose my permit, how terrible it will be," and all the rest of that. It will not be permitted. I will take the gavel and I will silence you immediately if you attempt to do so. Do you understand?

   DEFENDANT:

   Yes.

2. Although the defendant in a criminal proceeding unquestionably has the right to act as his own counsel, *see Faretta v. California,* 422 U.S. 806, 819–20, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562, 572–73 (1975), we note that the trial court·was not required in this case to grant the appellant's motion to proceed *pro se.* "As a general rule, where the request to defend without the assistance of counsel is made in the first instance on the morning of trial, the defendant's right to appear and defend in person depends on the facts and circumstances of each case and is ordinarily a matter within the discretion of the trial court." *State v. Sheppard,* 172 W.Va. 656, 310 S.E.2d 173, 189 (1983). In this case the motion to proceed *pro se,* made ten minutes before trial, could not be considered timely made. The court, therefore, could have, in its discretion, refused the defendant's motion.

rights were violated. The United States Supreme Court, in *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), held that the due process clause of the Fourteenth Amendment does not require that law enforcement agencies preserve breath samples in order to introduce breath-analysis tests at trial. 104 S.Ct. at 2535, 81 L.Ed.2d at 423. In reaching this decision the Court reasoned:

> In all but a tiny fraction of cases, preserved breath samples would simply confirm the Intoxilyzer's determination that the defendant had a high level of blood-alcohol concentration at the time of the test. Once the Intoxilyzer indicated that respondents were legally drunk, breath samples were much more likely to provide inculpatory rather than exculpatory evidence.
>
> Even if one were to assume that the Intoxilyzer results in this case were inaccurate and that breath samples might therefore have been exculpatory, it does not follow that the respondents were without alternative means of demonstrating their innocence.

104 S.Ct. at 2534–35, 81 L.Ed.2d at 422–23. We agree with the Supreme Court's reasoning and see no reason to adopt stricter standards in West Virginia.[3]

### III.

Responding to a request by the jury, the court allowed the prosecution to reopen, after the jury had retired, to recall a witness.[4] The trial court then conducted the examination of the witness. The appellant argues that the trial judge abused his discretion by allowing the prosecution to reopen at such a late stage in the trial. Generally it is true that the trial court may in its discretion allow additional evidence even after the jury has retired:

> Whether a party shall be permitted to introduce further evidence after the case has been closed and submitted to the jury, and before the jury returns a verdict, is a matter of sound discretion of the trial court, and its exercise of this discretionary power will not be cause for reversal except in case of the abuse of the discretion, and that it plainly appears that the person making the request has been injured by the refusal.

Syl. pt. 4, *State v. Littleton*, 77 W.Va. 804, 88 S.E. 458 (1916).[5] Nevertheless, such a practice is not to be encouraged or lightly pursued. *See People v. Ferrone*, 204 N.Y. 551, 553, 98 N.E. 8, 8 (1912). The trial court's discretion in reopening a case after the jury has retired should be exercised with the utmost caution and be based upon the following factors:

> (1) Whether good cause is shown for reopening. *See, e.g., Fernandez v. United States*, 329 F.2d 899, 903 (9th Cir.) *cert. denied*, 379 U.S. 832, 85 S.Ct. 62, 13 L.Ed.2d 40 (1964) (Defendant's lack of diligence reason not to allow reopening);[6]

---

**3.** While *California v. Trombetta* applied only to breath samples and not the ampoule used in collecting the sample, we see no reason why the same logic would not hold true to the ampoule, and, therefore, its retention after the test was unnecessary.

**4.** After the jury retired to deliberate, they sent out the following note:

> (1) Was there a follow-up calibration test as indicated in second Trooper's testimony? If so, where is record of such test?
> (2) Overprint on breathalyzer printout of Mr. Sandler's test raises questions; RE: Function of device. Was it functioning properly?

The trial court suggested that the State move to reopen its case to allow its breathalyzer expert to testify again. The trial court then conducted an examination of the witness concerning the procedures and reliability of the breathalyzer, covering much the same ground as did the direct examination of the witness.

**5.** This is in agreement with the vast majority of the jurisdictions which have decided the matter. *See, e.g., People v. Olsen*, 34 N.Y.2d 349, 354, 357 N.Y.S.2d 487, 490, 313 N.E.2d 782, 784 (1974); *State v. Roberts*, 247 Ga. 456, 457, 277 S.E.2d 644, 645 (1981). *Contra, Logan v. State*, 46 Tex.Crim. 573, 575, 81 S.W. 721, 722 (1904) (Texas statute disallows reopening after jury has retired).

**6.** Two examples of good cause would be where an essential element of the crime was overlooked or where newly discovered evidence bears directly on the question of the accused's guilt or innocence. *See People v. Olsen*, 34 N.Y.2d 349, 354, 357 N.Y.S.2d 487, 490, 313 N.E.2d 782, 784 (1974).

(2) Whether the new evidence is significant. *See People v. Johnson*, 155 Cal. App.3d 241, 248, 201 Cal.Rptr. 908, 911 (1984);

(3) Whether the evidence introduced at such a late stage would be given undue emphasis by the jury, prejudicing the party against whom it is offered. *See, Jones v. State*, 15 Ark.App. 283, 692 S.W.2d 775, 777 (1985);

(4) Whether the evidence is controversial in nature;[7] and

(5) Whether the reopening is at the request of the jury or a party.[8]

*See generally* Annot. 87 A.L.R.2d 849 (1963) (concerning propriety of reopening criminal case in order to present omitted or overlooked evidence).

■ Turning to the facts of this case, the request for new evidence came from the jury and not from a party and could have been answered concisely with little prejudice to the defendant. Therefore, the trial court was within its discretion in allowing the State to reopen its case. It handled the reopening poorly, however. The jury's questions were not answered concisely, but instead the State's witness was allowed to restate much of his direct testimony. Also, the witness was examined at length by the trial court, instead of by the State's attorney. "[W]hen a case is reopened for the reception of further evidence, it must be done in such a manner that the rights of all parties will be protected and ample opportunity afforded them for cross examination or rebuttal, and even for requesting additional instructions, if the matters introduced should reasonably require them." *Perkins v. State*, 253 Miss. 652, 655, 178 So.2d 694, 696 (1965). Breath test results are very powerful evidence in a drunk driving case. In this case the court allowed the State's breathalyzer expert to repeat much of his testimony. Where powerful evidence is unnecessarily repeated to the jury during their deliberations, the chance that undue influence will be placed on that evidence is great. Further, the defendant was not given any chance to rebut this testimony and was given no additional time for argument. The obvious prejudice to the defendant was compounded when the court assumed the role of prosecuting attorney and conducted a lengthy examination of the witness.

'It is almost an intellectual impossibility for a judge to engage in an examination of a witness on vital questions of the case on trial, without in some manner, and to some extent, indicating his own opinion. Every practitioner knows how eagerly alert jurors are to every utterance from the bench, and how sensitive is the mind of the juror to the slightest judicial expression.' ... A judge may ask questions for the purpose of clearing up points that seem obscure, and supplying omissions which the interest of justice demands, but it is not proper that he conduct an extended examination of any witness.

*Nash v. Fidelity-Phenix Fire Ins. Co.*, 106 W.Va. 672, 679, 146 S.E. 726, 728 (1929). (citations omitted)[9]

---

**7.** A controversial subject on reopening would require a cross-examination and possibly a rebuttal witness, an extended time for argument, and a continuance if the other side was surprised. "[A]t some point the trial must come to an end. If requests to reopen were casually granted and became routine, the orderly trial process, fundamental to our jurisprudence, would soon erode away." *People v. Olsen*, 34 N.Y.2d 349, 353, 357 N.Y.S.2d 487, 490, 313 N.E.2d 782, 784 (1974) (citation omitted).

**8.** "When, ... the jury, of its own accord, requests further evidence, the dangers to be guarded against are generally more apparent than real. For the most part their inquiries are brief and direct and if the evidence sought re-

ceives additional emphasis, it comes from the fact finders themselves and not as the result of counsel's stratagem." *People v. Olsen*, 34 N.Y.2d 349, 354, 357 N.Y.S.2d 487, 490–91, 313 N.E.2d 782, 785 (1974) (footnote omitted).

**9.** This is not to say that a judge is barred from asking any questions upon reopening. To the contrary, we could see a situation where one or two concise questions, asked in a neutral fashion, would fully answer the jury's questions, and the trial court, in order to insure that no extraneous issues are raised, propounds the questions itself. In most instances, this would not be improper. Nevertheless, if lengthy examination is required, an attorney and not the court should conduct it.

Because of the cumulative nature of the evidence presented in reopening and the prejudicial manner in which it was introduced, we hold that error was committed by the trial court in this regard.[10]

Because the appellant was not adequately warned of the dangers of representing himself *pro se,* and because the trial court improperly allowed the prosecution to reopen after the jury had rested, the judgment of the Circuit Court of Jefferson County is hereby reversed and the case remanded for a new trial.

Reversed and remanded.

---

**10.** During the jury *voir dire* it was disclosed that juror Jason Michael had been a client of the appellant's counsel, William Martin. The trial court then *sua sponte* struck juror Michael for cause. While this was not reversible error be-

cause no objection by the appellant was noted and no prejudice shown, it would have been better form for the trial court to have awaited a challenge for cause from counsel before striking the juror.