342 S.E.2d 186

**STATE of West Virginia**

v.

**Richard GRAVELY.**

No. 16722.

Supreme Court of Appeals of West Virginia.

March 25, 1986.

See also 299 So.2d 375.

Frank W. Helvey, Jr., Public Legal Services, Charleston, for appellant.

Charlie Brown, Atty. Gen., Bethany Boyd, Asst. Atty. Gen., Charleston, for appellee.

## PER CURIAM:

The appellant, Richard Gravely, was convicted of aggravated robbery by a jury in the Circuit Court of Logan County on June 2, 1981, and sentenced to fifteen years in the penitentiary. In *State v. Gravely,* 171 W.Va. 428, 299 S.E.2d 375 (1982), we reversed the appellant's conviction finding reversible error in the admission of testimony regarding identification of the appellant that was obtained in violation of his right to counsel. The appellant was retried on December 7, 1983, again found guilty and sentenced to a term of fifteen years in the penitentiary. At his second trial the appellant represented himself.

On June 8, 1984, appellant filed a petition for a writ of habeas corpus in this Court alleging that he did not knowingly waive his right to counsel and that he was denied his right to appeal. We issued a writ of habeas corpus returnable to Logan County. On August 3, 1984, the circuit court held a hearing in which testimony concerning the appellant's allegations was admitted. By order dated August 13, 1984, the court denied the petition for habeas corpus on the waiver of counsel issue and resentenced the appellant in order to allow him to perfect an appeal.

The appellant contends that two errors were committed at his second trial: (1) the court erred in admitting testimony relating to the pretrial identification held inadmissible in *State v. Gravely, supra;* and (2) the court erred in finding that he waived his right to counsel with full knowledge and comprehension of that right and of the danger in relinquishing it.

The facts surrounding the underlying crime in this case were fully set forth in *State v. Gravely, supra.* Briefly stated, on January 3, 1981, two males robbed an A & P grocery store in Logan County, West Virginia. One of the robbers wore a mask and took a sum of money from the cash register while the other, who was unmasked, held a gun upon the store cashier, Jeffrey Stevens.

Several minutes after the robbery, two police officers who had been dispatched to investigate the crime, spotted two suspects at Penny's Drive Inn. One suspect escaped, and the other, Robert West, was arrested. The police officers found a revolver and $346 at the drive-in. Based upon statements made by Mr. West, the police then went to the West home where they located and arrested the appellant.

Approximately an hour after his arrest the appellant received a statement of his rights. That same morning in the jail section of the courthouse, Jeffrey Stevens, the robbery victim, was unable to identify the appellant as one of the robbers when he observed him from a separate room. The appellant was then taken before a magistrate in the basement of the courthouse where he was advised of the charge against him, bond was set, and he indicated his desire to be represented by counsel. When he left the magistrate's office, the appellant was again observed by Jeffrey Stevens, who was sitting in a police cruiser. As a result of Stevens' observation of the appellant in the courthouse basement, he identified the appellant as the unmasked robber who held the gun during the robbery. At the appellant's first trial in June of 1981, Stevens made an in-court identification of the appellant as the unmasked robber. Evidence was also admitted at the trial regarding the pretrial observations of the appellant by Stevens in the jail and basement areas of the courthouse.

In *State v. Gravely, supra,* we held that Jeffrey Stevens' identification of the appellant in the basement of the courthouse after the appellant had left the magistrate's office where he expressed a desire to be represented by counsel was a violation of the appellant's Sixth Amendment right to counsel. In this appeal the appellant asserts that when he was retried the trial court erred in again admitting evidence of this pretrial identification.

In the appellant's second trial, the prosecuting attorney did not question Mr. Stevens about the basement identification on

direct examination. On cross-examination, the appellant questioned Stevens about his failure to identify the appellant when he observed him shortly after the booking procedures in the upstairs part of the jail. Mr. Stevens admitted that he could not identify the appellant at that time. He testified that he was approximately thirty feet away from the man he was asked to identify and that the room he was in was dark. The testimony of which the appellant complains was elicited by the prosecutor on redirect examination of Mr. Stevens:

Q. Mr. Stevens, since Mr. Gravely has asked you, after the robbery occurred didn't the Sheriff's Department call and ask you to come to the court house to look at a suspect they arrested?

A. They did.

Q. Where did they put you to try and look at him?

A. In a holding cell to the left of the door.

Q. What were the lighting conditions where you were standing?

A. Well, I was seated on the floor and it was dark. There wasn't a light on.

Q. Were you able to say positively then the man they had standing there was the man that robbed you?

A. No.

Q. Did you see him again though a few minutes later?

A. I did.

Q. Where did you see him then?

A. In the basement of the court house.

Q. Did you identify him then?

A. I did.

Q. Who was the man you identified in the basement of the court house as being the man who robbed you?

A. Him (pointing to the defendant).

In *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977), we held that "[f]ailure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reason-able doubt." In the instant case, both Jeffrey Stevens and David Sargent, a store clerk who was present during the robbery, made in-court identifications of the appellant. Each also independently identified the appellant as one of the perpetrators of the crime from a photographic display. In addition, the revolver used in the robbery and the money stolen from the grocery store were recovered from the drive-in where Robert West and the appellant were observed shortly after the robbery. Part of the money was in a sock of the same description as the one described by Mr. Stevens as used during the robbery. Finally, the identification testimony was not part of the State's case in chief but formed only a minor part of Jeffrey Stevens' testimony on redirect. The prosecutor did not dwell on the improper basement identification but merely rehabilitated the witness's credibility by having him testify that he was able to identify the appellant in the court-house basement when he had previously testified in response to a question from the appellant, that he was unable to make an identification in the upstairs part of the jail. Taking all these factors into consideration, we are of the view that the admission of the testimony relating to the basement identification of the appellant was merely cumulative of other evidence before the jury and was harmless beyond a reasonable doubt.

The appellant also complains that the court erred in holding that he had waived his right to counsel with full knowledge and comprehension of that right and of the dangers in relinquishing the same. At a pretrial hearing conducted prior to the appellant's second trial, the appellant filed a "motion to proceed *pro se*" and indicated in his motion that he wanted to represent himself at trial, but that he wanted his court-appointed attorneys to remain in the courtroom to assist him. The appellant also indicated that his motion was based on the fact that a disagreement had arisen between himself and his attorneys about the manner in which the case should be conducted. The appellant's court-appointed attorneys agreed that "irreconcilable differences" existed as to how the case should

be handled. Because of these differences the attorneys filed a motion to withdraw from the case.

Before ruling on either of the motions, the trial court questioned the appellant about his desire to represent himself and dismiss his attorneys. The appellant emphatically stated that he wanted to represent himself and that he chose to do so with "full knowledge and understanding of ... rights and of the risks involved in ... self-representation." The appellant, however, repeatedly indicated to the court that he wanted to represent himself with the presence of an attorney. When informed by the court that he had no legal right to represent himself and to have court-appointed counsel to assist him, the appellant unequivocally stated that he wanted to represent himself. He did, however, request that the record show that his request to proceed with the assistance of an attorney had been denied. The court granted the appellant's court-appointed attorneys' motion to withdraw from the case.

Prior to striking the jury at the appellant's trial which took place on December 7, 1983, a bench conference was held at which the court stated:

THE COURT: I want the record to reflect that yesterday or day before yesterday I explained to Mr. Gravely about his right to represent himself and I determined at that time as a matter of fact that he understood the nature and consequences of his decision, and he has had the benefit of all the transcripts for a long period of time of his previous trial and suppression hearings ... I also want the record to reflect that Mr. Gravely is here representing himself. He's well-dressed. He has a nice appearance. He is lucid, clear. He seems to know what he is doing. In the future the question may arise as to whether or not he was at an extreme disadvantage. I don't see that. I see a very alert, young person who had made a decision to represent himself.

When questioned by the court, the appellant indicated that he understood the court's remarks.

The trial court's decision to allow the appellant to represent himself was based on our holding in *State v. Sheppard*, 172 W.Va. 656, 310 S.E.2d 173, 186 (1983) that the right of self-representation is "a correlative of the right to assistance of counsel guaranteed by article III, section 14 of the West Virginia Constitution," and "an accused has a constitutional right to defend himself in a criminal proceeding without the assistance of counsel." In *Sheppard*, we held that this right of self-representation exists where the request to do so is timely made; the defendant elects to do so with full knowledge and understanding of his rights and of the risks involved; and the defendant exercises the right in a manner that does not disrupt or delay the trial. In syllabus point 2 of *State v. Sandler*, 175 W.Va. 572, 336 S.E.2d 535 (1985), citing *Sheppard*, we stated:

"The determination of whether an accused has knowingly and intelligently elected to proceed without the assistance of counsel depends on the facts and circumstances of the case. The test in such cases is not the wisdom of the accused's decision to represent himself or its effect upon the expeditious administration of justice, but, rather, whether the defendant is aware of the dangers of self-representation and clearly intends to waive the rights he relinquishes by electing to proceed *pro se*."

The appellant argues that under *State v. Sheppard, supra*, the trial court was required to inform him that self-representation is almost always detrimental and that one who asserts the right to self-representation cannot later claim ineffective assistance of counsel. These warnings are among the guidelines set out in *Sheppard* to assist trial courts in dealing with an accused who wishes to defend himself. However, in *State v. Sandler, supra*, we held that these guidelines are not mandatory and that the omission of one or more of them in a particular case would not necessarily require reversal so long as the record shows that the "defendant made a truly intelligent and knowledgeable waiver

of his right to counsel." 175 W.Va. at ——, 336 S.E.2d at 537.

Applying these principles to the facts of the case before us, we are of the opinion that the trial court did not err in finding that the appellant knowingly and intelligently elected to proceed to trial without the benefit of counsel. The court in this case was familiar with the appellant, having presided over the first trial, and was able to evaluate the appellant's intelligence and understanding of the consequences of waiving counsel. Several times the court questioned the appellant to ascertain whether he understood the consequences of self-representation. Having sat through his first trial, the appellant obviously was familiar with the manner in which a trial is conducted and was well aware of the responsibility he was accepting by relieving his counsel. The fact that the court did not warn the appellant of the specific dangers and disadvantages of self-representation is not reversible error in this case, where the record indicates that the appellant was familiar with the court system and exhibited an awareness of the consequences of his decision. The appellant was not entitled as a matter of right to appear as co-counsel, and we find no abuse of discretion in the court's decision refusing to allow him to do so, *State v. Sheppard, supra.* When he was so informed, the appellant unequivocally expressed a desire to represent himself and we find no error in the court's decision granting his request.

Finally, we note that the guidelines set out in *Sheppard* for dealing with a defendant who wants to represent himself should be strictly followed and substantiated on the record so that whether a particular defendant did in fact make a knowing and intelligent waiver of his right to counsel can be readily ascertained on appellate review.

Accordingly, the judgment of the Circuit Court of Logan County is affirmed.

Affirmed.