IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2024 Term

_____

No. 23-219

_____

**FILED**

**November 7, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*IN RE* S.M.

_____

Appeal from the Circuit Court of Wyoming County
Honorable Michael M. Cochrane, Judge
Civil Action No. CC-55-2022-JA-21

AFFIRMED

_____

Submitted: October 9, 2024
Filed: November 7, 2024

Colin M. Cline, Esq.
Princeton, West Virginia
and
Lela Walker, Esq.
Oceana, West Virginia
Attorneys for Petitioner, G.M.

Timothy P. Lupardus, Esq.
Lupardus Law Office
Pineville, West Virginia
Guardian ad Litem

Patrick Morrisey, Esq.
Attorney General
James "Jake" Wegman, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for Respondent,
Department of Human Services

CHIEF JUSTICE ARMSTEAD delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "'Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.'  Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996)."  Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

2.      "Circuit courts should appoint counsel for parents and custodians required to be named as respondents in abuse and neglect proceedings *incident to the filing of each abuse and neglect petition.* Upon the appearance of such persons before the court, evidence should be promptly taken, by affidavit and otherwise, to ascertain whether the parties for whom counsel has been appointed are or are not able to pay for counsel. In those cases in which the evidence rebuts the presumption of inability to pay as to one or more of the parents or custodians, the appointment of counsel for any such party should be promptly terminated upon the substitution of other counsel or the knowing, intelligent waiver of the

i

right to counsel. Counsel appointed in these circumstances are entitled to compensation as permitted by law." Syl. Pt. 8, *In the Matter of Lindsey C.*, 196 W. Va. 395, 473 S.E.2d 110 (1995).

3. "A litigant has the right to represent himself without counsel if he knowingly and intelligently elects to do so." Syl. Pt. 3, *Sisler v. Hawkins*, 158 W. Va. 1034, 217 S.E.2d 60 (1975).

4. "The right of self-representation is a correlative right to assistance of counsel guaranteed by article III, section 14 of the West Virginia Constitution." Syl. Pt. 7, *State v. Sheppard*, 172 W. Va. 656, 310 S.E.2d 173 (1983).

5. An indigent parent or custodial respondent in an abuse and neglect case has a right to appointed counsel at all stages of the proceedings, but he or she may elect to continue self-represented upon a knowing and intelligent waiver of the right to counsel.

6. "'The determination of whether [a litigant] has knowingly and intelligently elected to proceed without the assistance of counsel depends on the facts and circumstances of the case. The test in such cases is not the wisdom of the [litigant's] decision to represent himself or its effect upon the expeditious administration of justice, but, rather, whether the [litigant] is aware of the dangers of self-representation and clearly

ii

intends to waive the rights he relinquishes by electing to proceed *pro se*.' *State v. Sheppard*, [172] W. Va. [656, 671], 310 S.E.2d 173, 188 (1983) (citations omitted)." Syl. Pt. 2, *State v. Sandler*, 175 W. Va. 572, 336 S.E.2d 535 (1985).

7.    "'Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va. Code, [49-4-604 (2020)] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va. Code, [49-4-604(c) (2020)] that conditions of neglect or abuse can be substantially corrected.' Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011).

**ARMSTEAD, Chief Justice:**

The petitioner, G.M., appeals the March 21, 2023, order of the Circuit Court of Wyoming County terminating his parental rights to his daughter, S.M.[1]  In this appeal, the petitioner contends that the circuit court erred by accepting his stipulation to the allegations in the abuse and neglect petition and adjudicating him as an abusing and neglecting parent without the presence of counsel.  He further argues that the circuit court erred by terminating his parental rights.  Having considered the parties' briefs and oral arguments, the submitted appendix record, and the pertinent authorities, we find no error and, therefore, affirm the circuit court's order.

## I.  Facts and Procedural Background

This abuse and neglect case began in September 2021, when the respondent, the Department of Human Services ("DHS"),[2] received a referral alleging illegal drug use by T.M., S.M.'s mother.  At that time, DHS implemented a safety plan that was agreed to by both the petitioner and T.M., which included random drug testing and in-home services.

---

[1] We use initials instead of full names to protect the identity of the juvenile involved in this case.  *See* W. Va. R. App. Proc. 40(e).

[2] Pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

During the next several months, T.M. continued to test positive on her drug screens, and the family was never at their residence when DHS attempted home visits. The abuse and neglect petition was filed on March 29, 2022, after DHS was finally able to visit the home and found it to be without electricity. There was also a used needle laying on the kitchen counter, and T.M. admitted to recent drug use. The petition alleged that the petitioner was aware of T.M.'s drug use and that he was receiving treatment for his own opioid addiction at a methadone clinic.

The petitioner waived his right to a preliminary hearing and then appeared for an adjudicatory hearing on the afternoon of June 1, 2022. The petitioner's attorney was not present because he was in another county attending a hearing that had begun that morning and had yet to finish. Upon being informed that the petitioner's attorney was absent, the circuit court advised the petitioner that it would reschedule his adjudicatory hearing for the following week when his counsel could be present. However, the petitioner indicated that he did not want a continuance and that he wished to "plead guilty to it." Thereafter, the petitioner was extensively questioned by the guardian ad litem and the circuit court regarding his desire to stipulate to the allegations in the abuse and neglect petition without his attorney present. Upon determining that the petitioner was intentionally waiving his right to counsel at this hearing, the circuit court accepted the petitioner's stipulation to the allegations in the petition and adjudicated the petitioner as an abusing and neglecting parent. The petitioner was then granted an improvement period that required him to undergo a psychological evaluation, submit to random drug testing,

enroll in an in-patient drug and alcohol rehabilitation program, remain drug free, participate in in-home services, obtain housing, and obtain employment.

On August 31, 2022, the guardian ad litem filed a motion seeking revocation of the petitioner's improvement period asserting that the petitioner's recent drug screen results "are actually worse than the May results" and that he was not complying with his case plan. A hearing was held on the motion on October 5, 2022, where evidence of the petitioner's failure to comply with services was presented. The child protective services ("CPS") worker for DHS testified that the petitioner had failed multiple drug screens and had been difficult to contact. There was also evidence that showed that the petitioner had revoked his authorization for release of his drug screens, making it difficult for DHS to obtain the information. In addition, Wade Wilkins, clinical supervisor at the Williamson Comprehensive Treatment Center, testified that the petitioner had tested positive for fentanyl on September 1, 2022, and again on September 27, 2022, along with amphetamines and benzodiazepines. The petitioner also testified at the hearing and admitted, "I messed up the last couple of months." He further acknowledged that he had used controlled substances within the last week. Based on the evidence, the petitioner's improvement period was revoked by an order entered on October 6, 2022.

The disposition hearing was scheduled for November 10, 2022. At that hearing, a continuance was granted to allow the petitioner one more chance to enter in-

patient drug rehabilitation.[3]   The circuit court warned the petitioner that this was his last chance and if he had "any slip-ups," his parental rights would be terminated.   The final disposition hearing was held on March 2, 2023.   The evidence showed that during the time between the two hearings, the petitioner tested positive five times in December 2022 for methamphetamine and other substances, did not appear for any drug screenings in January 2023, and then was arrested for DUI and driving without a license on January 30, 2023. Following his arrest, the petitioner spent two and a half weeks in jail.   After he was released from incarceration, the petitioner tested negative on his drug screens.   At the final hearing, the petitioner testified that being in jail had allowed him to "detox" and that he needed just one more chance.  He also testified that he had not entered in-patient rehabilitation because there was no program that would accept him because of his use of methadone and/or his insurance company would not cover the costs.   The petitioner requested a dispositional improvement period, but his request was denied.   The circuit court then terminated the petitioner's parental rights, finding that there was no reasonable likelihood that the conditions of abuse and neglect would improve in the near future and that it was in S.M.'s best interests to terminate petitioner's parental rights.   This appeal followed.

---

[3] During this hearing, T.M.'s parental rights were terminated.   She did not file an appeal.  The permanency plan for S.M. is adoption in her current placement.

## II. Standard of Review

Our standard of review for abuse and neglect cases is well established. As syllabus point one of *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011), provides:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

With this standard in mind, we consider the parties' arguments.

## III. Discussion

The petitioner first argues that the circuit court erred by permitting him to stipulate to the allegations in the abuse and neglect petition without the presence of his counsel and then adjudicating him as an abusing and neglecting parent based on his stipulation. To support his argument, the petitioner relies upon West Virginia Code § 49-4-601(f)(4) (2019), which provides:

> A parent, guardian, custodian, or other person standing in loco parentis with the child who is alleged to have neglected or abused the child and who has not retained counsel and is

5

> financially unable to retain counsel beyond the initial hearing, shall be afforded appointed counsel *at every stage of the proceedings*.

(Emphasis added). The petitioner contends that because his right to counsel is a fundamental due process right, the circuit court erred by proceeding with his adjudication in the absence of his attorney and allowing him to stipulate to the allegations contained in the abuse and neglect petition. Conversely, the DHS maintains that the circuit court did not err in accepting the petitioner's stipulation without the presence of counsel because the record reflects that he knowingly and intelligently waived his right to an attorney at that hearing. We agree with the DHS.

This Court has long recognized the right of parent and custodial respondents in abuse and neglect proceedings to appointed counsel to represent them. In addition to statutory authorization, this Court has made clear that in this type of civil case "the circuit court's role is to ensure that litigants are adequately represented by counsel from the beginning to the end of the proceedings." *In Interest of Tiffany Marie S*., 196 W. Va. at 232, 470 S.E.2d at 186. Accordingly, this Court has held:

> Circuit courts should appoint counsel for parents and custodians required to be named as respondents in abuse and neglect proceedings *incident to the filing of each abuse and neglect petition.* Upon the appearance of such persons before the court, evidence should be promptly taken, by affidavit and otherwise, to ascertain whether the parties for whom counsel has been appointed are or are not able to pay for counsel. In those cases in which the evidence rebuts the presumption of inability to pay as to one or more of the parents or custodians, the appointment of counsel for any such party should be promptly terminated upon the substitution of other counsel or

6

the knowing, intelligent waiver of the right to counsel. Counsel appointed in these circumstances are entitled to compensation as permitted by law.

Syl. Pt. 8, *In the Matter of Lindsey C.*, 196 W. Va. 395, 473 S.E.2d 110 (1995). In providing for the appointment of counsel in abuse and neglect proceedings as well as the prompt termination of the appointment upon a waiver, this Court clearly recognized that "[a] litigant has the right to represent himself without counsel if he knowingly and intelligently elects to do so." Syl. Pt. 3, *Sisler v. Hawkins*, 158 W. Va. 1034, 217 S.E.2d 60 (1975). Indeed, "[t]he right of self-representation is a correlative right to assistance of counsel guaranteed by article III, section 14 of the West Virginia Constitution." Syl. Pt. 7, *State v. Sheppard*, 172 W. Va. 656, 310 S.E.2d 173 (1983). Therefore, succinctly stated, we now hold that an indigent parent or custodial respondent in an abuse and neglect case has a right to appointed counsel at all stages of the proceedings, but he or she may elect to continue self-represented upon a knowing and intelligent waiver of the right to counsel.

Determining whether a litigant has made a knowing and intelligent waiver of the right to counsel is the fundamental part of the process for allowing a litigant to proceed self-represented. As this Court has explained, "[o]nce the [litigant] expresses a timely and unequivocal desire to represent himself without the assistance of counsel, it must be ascertained whether the [litigant's] election to proceed [self-represented] is made knowingly and intelligently." *Id.* at 671, 310 S.E.2d at 188. Such determination is necessary because when a litigant elects to proceed self-represented, "'he relinquishes, as

a purely factual matter, many of the traditional benefits associated with the right to counsel.'" *Id., quoting Faretta v. California*, 422 U.S. 806, 835 (1975)).

To assist trial courts in determining whether a litigant is making a knowing and intelligent waiver of the right to counsel, this Court has held:

> "[t]he determination of whether [a litigant] has knowingly and intelligently elected to proceed without the assistance of counsel depends on the facts and circumstances of the case. The test in such cases is not the wisdom of the [litigant's] decision to represent himself or its effect upon the expeditious administration of justice, but, rather, whether the [litigant] is aware of the dangers of self-representation and clearly intends to waive the rights he relinquishes by electing to proceed *pro se*." *State v. Sheppard*, [172] W. Va. [656, 671], 310 S.E.2d 173, 188 (1983) (citations omitted).

Syl. Pt. 2, *State v. Sandler*, 175 W. Va. 572, 336 S.E.2d 535. (1985).[4]

---

[4] In *Sandler*, we directed circuit judges considering a criminal defendant's decision to proceed without the assistance of counsel:

> 1.      To ascertain if the defendant is cognizant of and willing to relinquish his right to assistance of counsel.
>
> 2.      To [ensure] that the accused is aware of the nature, complexity and seriousness of the charges against him and of the possible penalties that might be imposed.
>
> 3.      To warn the accused of the danger and disadvantages of self-representation. (e.g., that self-representation is almost always detrimental and that he will be subject to all the technical rules of evidence and procedure, the same as if he had been represented by counsel.)

8

Upon review, we find that the petitioner in this case was made aware of the dangers of electing to proceed with his stipulation and adjudication without the presence of his counsel and that the petitioner expressed a clear intention to waive his right to representation at that hearing.[5]  In that regard, the record shows that the petitioner was questioned by both the guardian ad litem and the circuit judge about his decision to proceed with the hearing without his counsel present.  The following exchange took place between the guardian ad litem and the petitioner:

> Q:    The State at an adjudication would have to prove abuse or neglect by what's called clear and convincing evidence, and that's not quite as much as you have to prove things by in a criminal case, but it's a good bit more when you have to prove things in something like a slip and fall or a car wreck case.  Do you understand?
>
> A:    Yeah.

---

4.    To advise the defendant that he waives his right to refuse to testify by going outside the scope of argument and testifying directly to the jury.

5.    To make some inquiry into the defendant intelligence and capacity to appreciate the consequences of his decision.

*Id.* at 574, 336 S.E.2d at 537 (citation omitted).  In providing these guidelines, this Court explained that they "are not mandatory" and that failure to include one or more of the warnings will not necessarily constitute error.  *Id.*  Moreover, these guidelines were established in the context of a criminal case, and some aspects of the guidelines, such as those related to waiver of the right to refuse to testify and testimony before a jury, may not apply in the present case. Nonetheless, these guidelines are helpful in analyzing whether the petitioner properly waived his right to have counsel present when he agreed to the stipulation at issue in this case.

[5] It is undisputed that the petitioner's attorney was present and represented the petitioner at all stages of the proceedings that followed the adjudication in this case.

9

Q:    You have a right to have a hearing and defend yourself against that, and if you chose to have that hearing, your lawyer, Zac Whitten, would represent you at that hearing; is that correct?  Do you understand that?

A:    Yes, sir.

Q:    He could object to the State's evidence, and I'm sure he would if he felt like the objection was proper, and he could cross-examine witnesses, and he could call witnesses to help you.

Do you understand all of that?

A:    Yes, sir, I do.

Q:    Knowing all of that, do you want to have that hearing or would you like to go ahead and stipulate today?

A:    I would like to go ahead and stipulate today.

The transcript of the hearing also shows that the guardian ad litem warned the petitioner that

[a] stipulation could send you on one of two paths.  You can either do everything right and have smooth sailing and get reunified with the child; or, a stipulation could be the first step on the wrong path towards not doing things right and winding up with a termination of parental rights if things don't go well.

The circuit court further informed the petitioner that "you have a right to the hearing today, for which witnesses must be produced by the State of West Virginia to prove adjudication."  Of particular significance is the fact that, while counsel was not present at the hearing, it was clear that the petitioner had previously conferred with his attorney and that he was going forward based on the advice of his counsel.  Indeed, while affirmatively indicating

10

that he understood and was of free and clear mind, the petitioner said, "Me and my lawyer talked about it, and he told me it would be the best thing for me to do is go ahead. . . . Yeah, I agree with him."

Given all the above, we find no merit to the petitioner's argument that the circuit court erred by allowing him to stipulate to the allegations in the abuse and neglect petition at his adjudicatory hearing in the absence of counsel. As set forth above, the transcript of the hearing clearly shows that the petitioner was adequately informed of the seriousness of the allegations against him and the risks of proceeding without counsel and of entering into the stipulation. The transcript further illustrates that the petitioner understood these facts and willingly requested to proceed without counsel. Clearly, the petitioner knowingly and intelligently waived his right to counsel at his adjudicatory hearing. Accordingly, the circuit court did not err by allowing the petitioner to stipulate to the allegations in the abuse and neglect petition and then adjudicating him as an abusing and neglecting parent based on his stipulation in the absence of his counsel.

The petitioner next argues that the circuit court erred by terminating his parental rights. Essentially, the petitioner contends that he should have been given one more chance to comply with the terms of his improvement period, claiming that he was having difficulty locating a long-term substance abuse rehabilitation program that would accept him due to his use of methadone. In response, DHS asserts that the petitioner was given multiple chances to correct the conditions of abuse and neglect and that the circuit

11

court did not err in finding there was no reasonable likelihood that the petitioner could correct the conditions of abuse in the near future, warranting the termination of his parental rights. We agree.

The record shows that the petitioner was given multiple chances to comply with the terms of his improvement period and he failed at every opportunity. He repeatedly tested positive on his drug screens for methamphetamine and fentanyl. He was even given one last chance to get treatment for his substance abuse after his improvement period was revoked. However, instead of seeking treatment, he continued to test positive on his drug screens, then disappeared for a lengthy amount of time, and eventually he was arrested for DUI. While the petitioner claims that he was unable to get in-patient drug treatment because of his methadone use, the record shows that he was offered intensive out-patient services as an alternative and only sporadically participated. Although the petitioner had tested negative on drug screens upon being released from incarceration a few weeks prior to the final disposition hearing, the CPS worker testified that she did not believe that the petitioner would be able to maintain his sobriety. She further testified that given the petitioner's failure to continuously participate in out-patient treatment, she did not believe he would have stayed in a long-term treatment facility.

Based on the above evidence, the circuit court found that the petitioner had failed to cooperate with DHS's reunification efforts and participate in the family case plan. The circuit court further found that the petitioner was not successful in addressing his

12

substance abuse during his improvement period or when he was given one last opportunity to seek substance abuse treatment after the disposition hearing was continued for that purpose. Consequently, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that it was in S.M.'s best interests to terminate the petitioner's parental rights.

This Court has held that,

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va. Code, [49-4-604 (2020)] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va. Code, [49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). West Virginia Code § 49-4-604(c)(6) authorizes circuit courts to

> [up]on a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child, terminate the parental, custodial and guardianship rights and responsibilities of the abusing parent and commit the child to the permanent sole custody of the nonabusing parent, if there be one, or, if not, to either the permanent guardianship of the department or a licensed child welfare agency.

Under West Virginia Code § 49-4-604(d),

> "No reasonable likelihood that conditions of neglect or abuse can be substantially corrected" means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of

13

abuse or neglect on their own or with help. Those conditions exist in the following circumstances, which are not exclusive:

(1) The abusing parent or parents have habitually abused or are addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through [with] the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning;

. . . . [and]

(3) The abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child[.]

Accordingly, we find no merit to the petitioner's argument that the circuit court erred by terminating his parental rights.

## IV. Conclusion

For the reasons set forth above, the March 31, 2023, order of the Circuit Court of Wyoming County that terminated the petitioner's parental rights is affirmed.

Affirmed.

14