# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

**December 2, 2013**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs)  No. 12-1535** (Kanawha County 11-F-606)

**Garland Murray,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Garland Murray, by counsel Kelli Hill and Nancy Hill, appeals his conviction for nighttime burglary, kidnapping, and first degree murder on constitutional grounds. The Circuit Court of Kanawha County entered petitioner's sentencing order on December 4, 2012. The State, by counsel Laura Young, filed a response to which petitioner replied.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Late on the evening of April 20, 2010, petitioner's brother entered the home of Gregory and Ebony Poole without permission. Mrs. Poole was alone in the house. At the time, Mr. and Mrs. Poole were on supervised release from federal prison for convictions relating to the sale of illegal drugs. Petitioner's brother forced Mrs. Poole outside. Once there, Mrs. Poole saw her husband seated in the couple's vehicle with a gun to his back. Holding the gun and seated inside the car was petitioner Garland Murray. Mrs. Poole freed herself from petitioner's brother and fled the scene. Thereafter, petitioner, his brother, and Mr. Poole drove off. Soon thereafter, Mr. Poole was seen being chased by one man while a second man walked away. Shots were fired. Early the following morning, Mr. Poole's lifeless body was found lying face down. He had been shot three times, once in the face and twice in the back of the head.

Both petitioner and his brother were indicted on ten counts including two burglary-related counts, one count of the first degree murder of Mr. Poole ("decedent"), two counts of attempted kidnapping (of decedent and Mrs. Poole), and five counts related to the manufacture and/or intent to deliver illegal drugs.

Petitioner was initially represented by Public Defender Justin Collin. However, petitioner was dissatisfied with Mr. Collin's representation and wrote a letter to the trial court in August of 2011 seeking the appointment of one of four other named attorneys. By order entered August 25,

1

2011, the trial court appointed Attorneys Tim C. Carrico and L. Thompson Price, although neither was named in petitioner's letter.

Petitioner's October 29, 2011, trial was continued when petitioner's brother pled guilty to conspiracy to commit kidnapping. At his plea hearing, petitioner's brother stated that he, petitioner, and a third person planned to hold decedent until decedent would "take us to where he was holding the drugs . . . ."

Mr. Carrico sought to withdraw as petitioner's counsel in December of 2012. Soon thereafter, the trial court received a letter from petitioner asking for the appointment of new counsel. Petitioner claimed that Mr. Carrico and Mr. Price had wrongfully agreed to continue his trial date, failed to respond to his inquiries, and failed to timely prepare for trial. Petitioner asked that Attorney Rico Moore be appointed as his new counsel.

At a December 12, 2012, hearing on Mr. Carrico's motion to withdraw, Mr. Price joined the motion. Both attorneys claimed that petitioner did not trust them and that the attorney/client relationship was not intact, operational, or functional. Mr. Carrico claimed that petitioner essentially wanted face-to-face contact with counsel on a daily basis. Prior to ruling on the motion to withdraw, the trial court told petitioner that, "These are two pretty good lawyers . . . they will do whatever is necessary to work on your case and get it ready for trial." The trial court then denied counsel's motion to withdraw, but agreed to move petitioner from Huttonsville Correctional Center to the South Central Regional Jail so he would be more readily accessible to his counsel. In response, petitioner said, "I would rather represent myself." The trial court replied, "I will not let you run this court. . . . If you want Mr. Rico Moore to represent you, fine. Go hire him." The court then said, "[Mr. Carrico and Mr. Price] will represent you, I am confident, effectively and competently in court."

At a January 30, 2012, hearing, the trial court inquired if the conflicts between petitioner and his counsel had been resolved. Both Mr. Carrico and petitioner answered, "Yes, Sir."

Prior to trial, petitioner's counsel resolved petitioner's drug-related counts by plea agreement, proffered a notice of alibi, filed multiple motions to suppress evidence, and worked with petitioner to prepare for trial.

Petitioner's trial commenced on May 7, 2012, and ended on May 14, 2012. Mrs. Poole testified during the State's case-in-chief. Petitioner claims that she was the lone eyewitness testifying in support of the State's case against him and that her credibility was demonstrably untrustworthy. The State also entered evidence regarding text messages and cell phone calls made on the night decedent was murdered between petitioner and his brother and between petitioner's brother and decedent. Although the State listed petitioner's brother on its witness list, it did not call him to testify at trial. The defense, over petitioner's objection, also did not call petitioner's brother to testify. The jury found petitioner guilty of nighttime burglary, first degree murder (with a recommendation of mercy), and attempted kidnapping.

On June 11, 2012, the prosecutor filed a recidivist information against petitioner regarding his prior convictions for felony robbery in May of 2000; malicious wounding,

possession of a firearm, and wanton endangerment in January of 2004; and two counts of intent to deliver cocaine in November of 2010. Petitioner was tried as a recidivist in December of 2012. A jury found petitioner to be the person who had committed the crimes listed in the information.

Petitioner was sentenced on December 4, 2012, to not less than one nor more than fifteen years in prison for nighttime burglary; life in prison with the possibility of parole for murder; and life in prison for attempted kidnapping. This sentence reflected an enhancement for petitioner's previous felony convictions and the finding that he was a recidivist.

Petitioner now appeals his conviction.

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

On appeal, petitioner raises seven assignments of error. Petitioner first argues that he was denied his right to waive counsel and to self-represent pursuant to Article 3, Section 14, of the West Virginia Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. *See* Syl. Pt. 7, *State v. Sheppard*, 172 W.Va. 656, 310 S.E.2d 173 (1983) (The right of self-representation is a correlative of the right to assistance of counsel.); *Faretta v. California*, 422 U.S. 806 (1975) (Criminal defendants have a constitutional right to refuse counsel and represent themselves.). Specifically, petitioner argues that the trial court forced representation upon him after he said, "I would rather represent myself."

Immediately after petitioner said, "I would rather represent myself[,]" he asked the trial court to appoint new counsel. Further, when the trial court denied his request for new counsel, petitioner agreed to give Mr. Carrico and Mr. Price another chance.[1] A month later, when petitioner was again in front of the trial court on a pretrial matter, he admitted to the court that his issues with his counsel had been resolved and did not renew his request to self-represent. A defendant has a right to self-represent, but he must voice that desire in a timely and unequivocal manner. Syl. Pt. 8, in part, *Sheppard* at 660, 310 S.E.2d at 177. Because petitioner never unequivocally asked to self-represent, the trial court's decision to maintain the appointment of Mr. Carrico and Mr. Price was within its discretion. Therefore, we find that the trial court did not err.

Petitioner next argues that he was denied his right to be present at all critical stages of the proceedings against him, as conferred by the Sixth Amendment to the United States Constitution;

---

[1]Petitioner was not entitled to the appointed counsel of his choice and could only reject appointed counsel for good cause. Syl. Pt. 2, *Watson v. Black*, 161 W.Va. 46, 239 S.E.2d 664 (1977).

3

Article 3, Section 14 of the West Virginia Constitution; West Virginia Code § 62-3-2; and Rule 43 of the West Virginia Rules of Criminal Procedure. Petitioner states that while he was in a holding cell in the courthouse, the trial court, the prosecutor, and petitioner's counsel answered three questions[2] posed by the jury during deliberations. In the first instance, the jury sought the telephone numbers of petitioner, his brother, decedent, and his widow. Prior to answering this question, the judge offered to bring petitioner to the courtroom. However, petitioner's counsel affirmatively stated the petitioner's presence was not necessary. The trial court's answer to the question was that the jury would have to rely on the evidence presented at trial. The jury's second question related to the definition of kidnapping and attempted kidnapping. Although petitioner's counsel asked the trial court to reread its charge to the jury, the court chose instead to give the written jury instructions to the jury. As for the third question, the jurors asked the court how to correct a "miss-marked" verdict form. The court told the jurors to write "void" on all existing verdict forms, and then provided new forms.

The defendant's absence at a critical stage of his proceeding is not reversible error where there is no possibility of prejudice to the defendant. Syl. Pt. 3, *State ex rel. Redman v. Hedrick*, 185 W.Va. 709, 408 S.E.2d 659 (1991). In his brief on appeal, petitioner merely speculates that the trial court would have answered the questions differently had he been present. In answering the first two questions, the court merely directed the jurors' attention to the evidence at trial, and provided a written copy of the instructions they had heard in petitioner's presence. As for the third question, it was purely procedural and in no way relevant to the facts surrounding, or law governing, petitioner's case. Thus, there is nothing in the record tending to show prejudice resulting from petitioner's absence from the courtroom. As such, we find the court did not err.

Petitioner's third assignment of error is that the trial court erred by denying his constitutional right to compulsory process for obtaining witnesses in his favor. Petitioner's brother was on the State's witness list. However, the State did not call him. Thereafter, petitioner asked his counsel to call his brother. Counsel refused, but noted petitioner's objection for the record. The State contends that if petitioner's brother had been called to the stand, he could have testified that (1) he conspired with petitioner to commit kidnapping (to hold the decedent until he would take them to the location of the drugs); (2) petitioner tried to rob decedent and his wife; (3) petitioner had a gun; (4) petitioner was holding a gun to decedent's head as decedent drove the car away; (5) decedent got away from petitioner; and (6) petitioner chased decedent while shooting at him. The State also contends that if petitioner's brother had attempted to exonerate petitioner completely, petitioner's brother would have been impeached on cross examination with his plea hearing statement and by the testimony of at least one other witness.

Petitioner's right to compulsory process was not abridged. The record on appeal shows that petitioner's counsel made a tactical decision not to call petitioner's brother as a witness for the defense. Hence, in essence, petitioner's complaint regards his counsel's decision not to call his brother to the stand. We have oft said, claims for ineffective assistance of counsel are best presented in post-conviction petition for writ of habeas corpus:

---

[2]The jury also asked two non-substantive questions regarding when they could leave for the day and how long they had for lunch. Petitioner does not allege that he was prejudiced by being absent for these procedural questions.

"It is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal. The prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the lower court, and may then appeal if such relief is denied. This Court may then have a fully developed record on this issue upon which to more thoroughly review an ineffective assistance of counsel claim." Syl. Pt. 10, *State v. Triplett*, 187 W.Va. 760, 421 S.E.2d 511 (1992).

Syl. Pt. 13, *State v. Jessie*, 225 W.Va. 21, 25, 689 S.E.2d 21, 25 (2009). Based on the record before this Court, it is impossible for us to determine what motivated petitioner's counsel's actions. As such, we express no opinion as to whether counsel was, or was not, ineffective at this juncture.

Petitioner's fourth assignment of error is that the trial court violated Rules 404(a) and 404(b) of the West Virginia Rules of Evidence by allowing the State to introduce impermissible character evidence at trial. In regard to Rule 404(a), petitioner's complaint regards the State's use of his nickname, "CREAM," and the testimony that the nickname was an acronym for "Cash Rules Everything Around Me." In regard to Rule 404(b), petitioner contends that the State alleged that he was a drug dealer and a car thief.

"The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syllabus Point 10, *State v. Huffman*, 141 W.Va. 55, 57, 87 S.E.2d 541, 544 (1955), *overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W.Va. 435, 452 S.E.2d 893 (1994).

Syl. Pt. 2, *State v. Harris*, 230 W.Va. 717, 742 S.E.2d 133 (2013). "'A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.' Syllabus Point 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998)." *Id.* at Syl. Pt. 3.

In regard to petitioner's Rule 404(a) argument, we note that petitioner's counsel never objected to the State's use of petitioner's nickname. Therefore, we must analyze this assignment of error under the plain error doctrine.

To trigger application of the "plain error" doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings.

Syl. Pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

An unpreserved error is deemed plain and affects substantial rights only if the reviewing court finds the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect. In clear terms, the plain

5

error rule should be exercised only to avoid a miscarriage of justice. The discretionary authority of this Court invoked by lesser errors should be exercised sparingly and should be reserved for the correction of those few errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

Syl. Pt. 7, *State v. LaRock*, 196 W.Va. 294, 299, 470 S.E.2d 613, 618 (1996). Here, we find that the State's use of petitioner's nickname did not skew the fundamental fairness or basic integrity of petitioner's trial. Consequently, we find that the trial court did not err.

In regard to petitioner's Rule 404(b) argument, the State argues that it did not characterize petitioner as a car thief, but points out that a witness did testify that she saw a car matching the description of petitioner's car in front of her house and that Metro 911 told her the car was stolen. The State also argues that it did not characterize petitioner as a drug *dealer* although on three occasions the evidence showed that petitioner had *purchased* drugs from decedent. The State contends that this evidence was intrinsic to the State's theory of the case: that petitioner knew decedent because he had purchased drugs from him, and was able, therefore, to lure decedent out of his house under the pretext of a drug deal.

This Court has consistently held that evidence which is "intrinsic" to the indicted charge is not governed by Rule 404(b).

> In determining whether the admissibility of evidence of "other bad acts" is governed by Rule 404(b), we first must determine if the evidence is "intrinsic" or "extrinsic." [] "'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." [] If the proffer fits in to the "intrinsic" category, evidence of other crimes should not be suppressed when those facts come in as *res gestae*—as part and parcel of the proof charged in the indictment . . . . . Indeed, evidence admissible for one of the purposes specified in Rule 404(b) and *res gestae* not always is separated by a bright line. . . .

*State v. LaRock*, 196 W.Va. 294, 312 n.29, 470 S.E.2d 613, 631 n.29 (1996) (internal citations omitted). Here, the evidence of which petitioner complains was clearly intrinsic to the State's case. As such, the trial court did not abuse it discretion in allowing the State to admit the evidence regarding the car or petitioner's drug purchases.

Petitioner's fifth assignment of error is that the trial court forced petitioner to accept ineffective assistance of counsel in violation of his constitutional rights. Petitioner contends that his counsel's many errors proved that petitioner's representation was constitutionally deficient under an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. 668 (1984). However, as we noted above, such a complaint is best presented in a petition for post-conviction habeas corpus relief.

Petitioner's sixth assignment of error is that the trial court erred in allowing the admission of hearsay evidence: text messages from the night of the murder between petitioner and his brother and between petitioner's brother and decedent. The State offers that the text messages between petitioner and his brother fell within the hearsay exception to Rule of Evidence 801(d)(2)(e) (statements made by a conspirator in furtherance of the conspiracy). As for decedent's statements in the text messages, the State claims that they were admitted to show his state of mind on the night he was murdered. Further, the State alleges that the text messages between petitioner's brother and decedent regarding a possible drug deal that night were not admitted for the truth of the matter asserted, but to show that petitioner and his brother conspired to lure decedent out of his house. The trial court granted the State's motion and found that decedent's text messages were "not hearsay" and admissible under Rules of Evidence 803(1) (present sense impression), and 803(3) (then existing mental, emotional, or physical condition).

We concur with the circuit court's application of the Rules of Evidence and, therefore, find that the trial court did not abuse its discretion in admitting the text messages at trial.

Petitioner last argues that the trial court erred by refusing to give a cautionary jury instruction regarding the reliability of eyewitness testimony. Petitioner claims that eyewitness testimony was at issue in this case because decedent's wife was the only eyewitness who identified petitioner, and her testimony was contradictory.

> The formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard. A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and fair to both parties.

Syl. Pt. 6, *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995). Further, "[a]s a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion." Syl. Pt. 1, in part, *State v. Hinkle*, 200 W.Va. 280, 489 S.E.2d 257 (1996). We find that the trial court did not abuse its discretion in refusing petitioner's instruction given that decedent's wife had known both petitioner and his co-conspirator for a considerable period of time.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** December 2, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II